UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - X

JAMES FARR,

                      Petitioner,        REPORT AND
                                        RECOMMENDATION

      - against -                  01-CV-6921 (NG) (MDG)

CHARLES GREINER, Superintendent of
Green Haven Correctional Facility,

                      Respondent.

- - - - - - - - - - - - - - - - - - X

GO, United States Magistrate Judge:

    Petitioner James Farr seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2254. The petition in this matter was referred to me by the Honorable Nina Gershon to report and recommend. For the following reasons, I recommend that the petition be denied.

## PROCEDURAL BACKGROUND

    James Farr was charged with two counts of murder in the second degree, N.Y. Penal Law §§ 125.25[1], [2]; one count of attempted murder in the second degree, id. §§ 110.00, 125.25[1]; one count of reckless endangerment in the first degree, id. § 120.25; one count of criminal possession of a weapon in the second degree, id. § 265.03; and one count of criminal possession of a weapon in the third degree, id. § 265.02[4]. Following a jury trial before the Honorable Sheldon Greenberg, petitioner was convicted of depraved indifference murder in the second degree,

id. § 125.25[2]; attempted assault in the first degree, id. § 110.00/120.10[1]; criminal possession of a weapon in the second degree, id. § 265.03; and reckless endangerment in the first degree, id. § 120.25. On June 17, 1997, Justice Greenberg dismissed the count of reckless endangerment and sentenced petitioner to consecutive indeterminate prison terms of twenty years to life on the second degree murder conviction and three to six years on the attempted first degree assault conviction to run concurrently with a term of imprisonment of seven and one-half to fifteen years for the second degree weapon possession conviction.

## Wade/Huntley/Dunaway Hearing

Prior to trial, the court conducted a hearing to determine whether the line-up and in-court identifications of petitioner, petitioner's oral statement to the police and petitioner's videotaped statement to the assistant district attorney would be admissible as evidence at trial.

Detective John Schwartz of the Brooklyn South Homicide Task Force testified that he was assigned to investigate a homicide in the vicinity of Avenue H, Campus Road and East 21st Street. Transcript of Wade/Huntley/Dunaway Hearing held on May 19, 1997 ("Hearing Tr.") at 9. Upon arriving at the 70th precinct on July 2, 1996, Schwartz interviewed two witnesses to the shooting -- Alan Lucas and Stanley Joseph. Id. at 10. Initially, these witnesses told Schwartz the name of the shooter was Robert Baker. Id. at 10-11. After acquiring a photograph of Baker, Schwartz

arranged a photo array with Baker's photo and that of five other males with similar characteristics. Id. at 11. Schwartz showed the photo array to Alan Lucas who failed to identify any of the photos. Id. at 11-12. On July 19, 1996, Schwartz showed Lucas photographs on a computer displaying six photos at one time. Id. at 12-13. Lucas selected two different photos depicting Kevin Burgos.[1] Id. at 13-14. On July 30, 1996, Lucas identified petitioner's photo from a photo array containing eight photos while Stanley Joseph could not identify any of the photos from the same photo array. Id. at 19-22.

On September 9, 1996, Detective Richard Calabro, assigned to the Brooklyn South Homicide Squad Apprehension team, arrested petitioner at around 5:00 p.m. and took petitioner to the 70th precinct. Id. at 104-06, 108. Detective Calabro did not inform petitioner of the charges against him nor did he advise petitioner of his Miranda rights. Id. at 113-14.

That afternoon, after being informed of petitioner's arrest, Schwartz took petitioner into an interview room. Id. at 23-25. Agreeing to speak with Schwartz after being advised of his Miranda rights and signing a waiver form, petitioner said that he did not shoot anyone but admitted to firing one shot before "Antoine" grabbed the gun and started shooting at the individual he was fighting. Id. at 25-26, 30-31, 77-78.

---

[1] Petitioner's photo was not in the computer system and was not part of the photo array. Id. at 51.

Petitioner then signed a written statement that Schwartz prepared based on the interview.  Id. at 32, 35-36.  The interview lasted approximately two hours.  Id. at 80.

Stanley Joseph and Alan Lucas were later brought to the 70th precinct to view a line-up.  Id. at 36-38.  Prior to viewing the line-up, the witnesses were in the basement and could not have seen petitioner, who was upstairs in a holding cell in the squad room.  Id. at 36-38.  Petitioner stood in two line-ups in position number 4 with five other males.  Id. at 38-39.  When Joseph viewed the line-up, he asked Schwartz if petitioner would open his mouth.  Id. at 39.  Schwartz denied Joseph's request, but Joseph then identified petitioner as the shooter.  Id. at 40.  When Alan Lucas viewed the line-up, he immediately identified petitioner.  Id. at 41.  Joseph and Lucas had no contact with each other between the time each viewed the line-up.  Id. at 41.

Subsequently, petitioner gave a videotaped statement to an assistant district attorney.  Id. at 33-34.

The court denied petitioner's motion to suppress evidence finding that there was probable cause to arrest petitioner, the line-up identifications and the procedures leading up to the line-ups were not suggestive and that petitioner made both the written and videotaped statements voluntarily.  Id. at 133-37.

Evidence At Trial

A trial before a jury commenced on May 26, 1997.  Viewed in the light most favorable to the prosecution, the testimony

presented established that Arvi Howard was shot and killed by an assailant identified by two eyewitnesses as the petitioner.

Karin Hodges, petitioner's cousin, testified that on July 1, 1996 petitioner had a fistfight with Rob Lucas, who had been harassing her. Trial Transcript ("Tr.") at 85-87. Petitioner appeared to be upset about the incident. Id. at 90. Later that evening, Rob Lucas told his cousin, Alan Lucas ("Lucas"), about the fight. Id. at 327. Lucas knew petitioner from seeing him in the neighborhood over the years. Id. at 329, 365. Subsequently, Alan Lucas and Rob Lucas independently told Arvi Howard about the fight. Id. at 164-65, 328.

Later that night, while Lucas, Howard, Joseph and their friends were smoking marijuana in Tot Lot Park, petitioner rode by the park's entrance on a bicycle. Id. at 168-69, 332-33. Lucas pointed out petitioner to Howard as the person who had fought with Rob Lucas earlier that day. Id. at 168, 332. As petitioner was riding by the entrance to the park, Howard called out to him. Id. at 333-34. Petitioner came over to Howard, who asked what had happened between petitioner and his cousin. Id. at 334. Petitioner explained that "your cousin called my cousin a bitch and I beat the shit out of him . . . I think I handled my business like a man." Id. Howard replied, "I don't think you handled your business like a man," and petitioner rode away. Id. at 334. After petitioner rode away, Howard turned to his friends and said, "it's nothing." Id. at 169.

Hodges testified that she entered the park and told Howard that she did not want any trouble between him and petitioner over Rob Lucas. Id. at 95-96; see also id. at 173-74, 336. Sometime later, petitioner entered the park with two other men. Id. at 173-74. The park was dimly lit. Id. at 238, 335. One of the men with petitioner, who was older and short, walked up to Howard and argued with him briefly before punching him in the face. Id. at 177-78, 336. Lucas and their friends, who had been sitting on a nearby bench, jumped up and came over. Id. at 341-42, 353-54. Moments later, as Joseph started to "make a move on" petitioner, petitioner pulled a small chrome colored gun from his pants pocket and fired at Howard. Id. at 178-80, 343-44, 406. Joseph grabbed Howard's arm and shouted, "Arvi he got a gun." Id. at 180, 183, 193-95, 245, 397.

Joseph saw petitioner shoot Howard in the chest once while he stood "right next to Arvi" and about eight feet from petitioner. Id. at 181, 193-94, 249. Joseph heard five more shots as he fled. Id. at 181. It appeared to Joseph that petitioner was shooting at him, Lucas and "Mark" as they ran away. Id. at 181, 344-46. From about three feet away, Lucas saw petitioner shoot Howard in the chest twice, after which Howard fell against Lucas and then to the ground. Id. at 342-44, 408. As Lucas fled, he turned and saw petitioner shoot Howard a third time. Id. at 344. Petitioner then fired at Lucas. Id. at 344. Lucas heard six or seven shots fired in total. Id. at 357. Both

Joseph and Lucas identified petitioner as the shooter.  Id. at 170, 331.

When the police arrived, they found Howard lying on the sidewalk in front of the entrance to the park.  Id. at 34-35, 39, 44, 47-49, 56, 68-69, 72.  The police recovered seven discharged shells, including five .25 caliber casings inside the park and two .25 caliber casings adjacent to the entrance of the park. Id. at 63-64, 119-20, 124-26, 135-36, 141-42.

On September 9, 1996, Joseph and Lucas identified petitioner in a line-up.  Id. at 186-87, 350-51.  Both described the shooter as wearing his hair in braids and having a missing or chipped tooth.  Id. at 168, 331.

Howard's autopsy revealed one wound each to his head, neck, chest and abdomen.  Id. at 264-66.  According to the police pathologist, three of the wounds were potentially fatal.  Id. at 266.

At the close of the prosecution's direct case, the court denied petitioner's motion to dismiss the charges.[2]  Id. at 482.

Testifying in his own defense, petitioner stated that when he was initially confronted by Howard, Howard said, "don't come back around here again."  Id. at 511-12.  As petitioner rode away on his bicycle, Howard's friends started shouting to petitioner

---

[2] Counsel generally stated, "I move for a trial order of dismissal at this time.  I'll rest on the record with regard to the fact that the People have not, given the evidence in light most favorable to the prosecution.  They have not made out a prima facie case."  Id. at 482.

to come back. Id. at 513-14. Nervous and upset, petitioner rode

away on his bicycle although he knew "something was going to come

behind it." Id. at 515, 559.

While riding his bike, petitioner met a friend named Antoine

who was walking towards the park with two other men. Id. at 516.

Petitioner described Antoine as short, dark skinned and muscular,

with his hair in dreadlocks. Id. at 517. After petitioner told

Antoine about the earlier confrontation with Lucas, Antoine

handed petitioner a small silver gun and told him to hold it.

Id. at 518-19. Petitioner put the gun in his pocket since he did

not know whether Howard and his friends were armed. Id. at 538.

He went back to the park intending to fight Howard but not to

shoot anyone. Id. at 538-39.

When they arrived at the park, Antoine called Howard over

and they began to argue. Id. at 523-24. Antoine punched Howard

in the face, prompting Howard's friends to come towards them from

the benches. Id. at 527. As one of the group came towards

petitioner, petitioner took the gun out of his pocket and warned,

"I have a gun, I don't want to hurt nobody." Id. at 527-29.

Petitioner then fired the gun once into the ground, after which

Antoine grabbed the gun out of his hand and fired at Arvi Howard

several times. Id. at 529-532, 581-82, 584. At the time,

petitioner wore his hair in braids and had a cracked front tooth.

Id. at 504-05, 518.

The prosecution's rebuttal witness, Leroy Jones, had been

friends with petitioner for 15 years and testified that

petitioner had told him in September 1996 that he had shot

someone in Coney Island over a girl.  Id. at 602.  Although Jones

was arrested with petitioner on September 9, 1996, he never told

the district attorney's office about the conversation with

petitioner until the day of his testimony.  Id. at 604-08.

Post-conviction History

On December 11, 1998, petitioner appealed his conviction to

the Appellate Division, Second Department raising the following

claims:

1.   The sentence should be vacated because the court did not
     sentence petitioner on the reckless endangerment conviction;

2.   The weapon possession conviction should have been dismissed
     as an inclusory concurrent count of both murder and assault;

3.   The trial court erred in denying defendant's request for a
     missing witness charge; and

4.   The trial court erred in permitting the victim's baby to sit
     on her mother's lap during her testimony.

On June 28, 1999, the Appellate Division unanimously

affirmed petitioner's conviction.  People v. Farr, 262 A.D.2d

655, 693 N.Y.S.2d 186 (2d Dep't 1999).  The Appellate Division

held that weapon possession was not an inclusory count of either

murder or attempted assault, the trial court properly denied

petitioner's request for a missing witness charge and defendant

was not unduly prejudiced when the victim's wife testified while

her child sat on her lap.  The court also held that there was no

merit to petitioner's claim that the court failed to sentence him

for the reckless endangerment count since it had been dismissed.

On August 27, 1999, the Court of Appeals denied petitioner's request for leave to appeal. People v. Farr, 93 N.Y.2d 1017, 697 N.Y.S.2d 576 (1999).

On March 14, 2000, petitioner filed a pro se motion to vacate the judgment of conviction and set aside his sentence pursuant to N.Y. Crim. Proc. Law §§ 440.10 and 440.20 on the following grounds:

1.   The prosecution did not prove the intent element of depraved indifference murder and the verdict was against the weight of the evidence;

2.   Petitioner received ineffective assistance of trial counsel who failed (a) to raise the defense of justification, (b) to challenge the undue suggestiveness of the line-up, (c) to establish that the defendant's written and videotaped statements were procured in violation of his rights, (d) to object when a prosecution witness invoked his rights under the Fifth Amendment, (e) to cross-examine the prosecution's rebuttal witness vigorously, (f) to argue that the weapons possession conviction was an inclusory concurrent count of the murder and attempted assault counts, and (g) to call two witnesses who allegedly would have contradicted the prosecution's case;

3.   Petitioner was improperly denied counsel at the line-up and during interrogation; and

4.   The line-up identification procedure was unduly suggestive because petitioner was asked to smile by the police detective during the viewing by one witness.

On June 6, 2000, Justice Greenberg denied petitioner's motion, concluding that petitioner's first six claims of ineffective assistance of counsel and the claim of insufficient evidence were barred from consideration for failure to raise them on direct appeal. New York Supreme Court Memorandum Decision

dated June 6, 2000 (Resp. Exh. F). The court also refused to consider the claim that counsel failed to call two witnesses because petitioner provided no support for his allegation and the claim was overly vague. The court further held that petitioner had no right to counsel at the line-up and interrogation and, in any event, petitioner waived his right to counsel and the statements were never introduced at trial. The court found the claim regarding the suggestiveness of the line-up meritless because the request to smile was denied and had been made by the witness, not the detective. Finally, the court denied petitioner's weight of the evidence claim because it lacked jurisdiction to decide the issue.

On March 15, 2001, the Appellate Division denied petitioner's application for permission to appeal the denial of his motion to vacate his conviction and set aside his sentence. People v. Farr, No. 2000-02050 (2d Dep't 2001).

On April 18, 2001, petitioner filed a pro se writ of error coram nobis. Petitioner alleged ineffective assistance of appellate counsel for:

1. Raising a meritless claim;

2. Failing to consult sufficiently with petitioner and trial counsel;

3. Denying legal documents to petitioner;

4. Failing to assist petitioner in preparation of a pro se supplemental brief and to notify the Appellate Division of petitioner's intention to file such a brief;

5. Failing to raise the claim of ineffective assistance of

trial counsel for failure (1) to meet sufficiently with petitioner and prepare petitioner for his testimony, (2) to preserve the claim that the line-up was unduly suggestive because a police officer asked defendant to smile, (3) to investigate sufficiently the smile request claim, (4) to investigate an alleged eyewitness to the shooting with whom petitioner had made written contact, (5) to argue that petitioner's right to an attorney had attached as soon as he became the focus of the police investigation and (6) to challenge a prosecution witness's invocation of his Fifth Amendment rights;

6. Failing to raise the claim that trial counsel misrepresented himself in a sworn statement and a fabricated activity log;

7. Failing to raise the claim that the trial court improperly ordered a court officer to give certain transcribed testimony to the jury;

8. Failing to raise the claim that the trial court erred by submitting to the jury the charge of intentional murder as well as depraved indifference murder; and

9. Failing to claim that defendant's sentence was harsh and excessive.

By decision and order dated September 24, 2001, the Appellate Division denied petitioner's application for a writ of error coram nobis. People v. Farr, 286 A.D.2d 776, 730 N.Y.S.2d 739 (2d Dep't 2001).

On May 8, 2001, petitioner filed a second pro se section 440 motion claiming that the trial court improperly ordered a court officer to provide trial transcripts to the jurors during deliberations. On June 19, 2001, Justice Greenberg denied the claim as meritless. See New York Supreme Court Memorandum Decision dated January 19, 2001 (Resp. Exh. K). On November 16, 2001, the Appellate Division denied petitioner's application for permission to appeal. People v. Farr, No. 2001-06606 (2d Dep't

2001) (Florio, J.).

On October 8, 2001, petitioner filed a pro se habeas

petition raising the following claims:

1.   The four claims petitioner raised on direct appeal;

2.   Most of the issues raised by petitioner in his ineffective
     assistance of counsel claim and the four other claims that
     petitioner raised in his first section 440 motion; the claim
     of ineffective asssistance of trial counsel raised in his
     second section 440 motion; and the following five new claims
     of ineffective assistance of trial counsel for failure (a)
     to prepare petitioner for trial testimony, (b) to
     investigate a witness who sent a letter to defendant stating
     that she had viewed the incident, (c) to visit petitioner in
     order to consult and discuss trial strategy, (d) to protect
     petitioner's federal constitutional rights and (e) to
     challenge the court's decision regarding a jury request for
     a read back of the trial transcript.

3.   The nine claims of ineffective assistance of appellate
     counsel that petitioner raised in his writ of error coram
     nobis;[3] and

4.   A claim of ineffective assistance of appellate counsel for
     failure to argue that the trial court violated N.Y. Crim.
     Pro. Law § 310.30 by improperly ordering a court officer to

_____

     [3] This Court treats petitioner's reference in his petition
to his "Collateral Motion Writ of Error Coram Nobis" as
petitioner's intention to incorporate the arguments by reference
raised in petitioner's first petition for a coram nobis writ.
See Petition (ct. doc. 1) at 12-16.  Petitioner's claims
regarding ineffective assistance of appellate counsel are
specifically mentioned in "Ground One (A)," and "Ground (E)."
Id. at 12, 16.  The claims in "Grounds (B)-(D)," id. at 13-16,
appear to describe separate substantive challenges to the conduct
of trial counsel and the trial court, though most of the claims
were originally raised in petitioner's two applications for writs
of error coram nobis as error on the part of appellate counsel
for failure to raise these claims on direct appeal.  One claim of
ineffective assistance of trial counsel which was raised in
petitioner's first section 440 motion, the failure to argue that
petitioner's right to counsel had attached prior to his
interrogation and line-up, appears only in this section as
"Ground (B)."  Nonetheless, the underlying claim of ineffective
assistance of trial counsel is also discussed below.

give physical evidence to the deliberating jury.[4]

On September 13, 2002, the Honorable Lois Bloom stayed the petition to permit petitioner to return to state court to exhaust the claims petitioner raised for the first time in his habeas petition. Ct. doc. 11.

On August 26, 2002, petitioner filed a third pro se section 440 motion raising the following claims:

1. Ineffective assistance of trial counsel for cumulative errors, including the failure to (a) confer sufficiently with petitioner, (b) prepare petitioner for trial testimony, (c) interview the prosecution witnesses prior to trial, (d) interview a witness, named Sheryce Hodges, who allegedly sent a letter to petitioner stating that she saw the "entire event" from her apartment window, and (e) call a ballistics expert and a medical expert as defense witnesses;

2. Petitioner's due process right to a fair trial was violated by the unconstitutionally vague difference in required intent between second degree murder and second degree manslaughter, which the trial court failed to adequately explain in its instructions to the jury; and

3. The imposition of consecutive sentences was illegal.

On March 14, 2003, the state trial court summarily denied petitioner's motion. See New York Supreme Court Memorandum Decision dated March 14, 2003 (Resp. Exh. R). The court denied petitioner's due process claim for failure to raise it on direct appeal and ineffective assistance of counsel claims for failure to raise them in his previous section 440 motions. Converting in

_____

[4] As discussed in footnote 3, although couched in terms of error on the part of the trial court, "Ground D" of the Petition is contained in the section labeled "Collateral Motion Writ of Error Coram Nobis" concerning claims raised in his petitions for writs of error coram nobis. Petitioner withdrew this ground in his second amended habeas petition. See ct. doc. 29 at 1.

the interest of justice, petitioner's consecutive sentence claim to a section 440.20 motion, the court denied the motion as a proper exercise of discretion by a sentencing court when separate offenses are perpetrated against separate victims.  On September 5, 2003, the Appellate Division denied petitioner's application for leave to appeal.  People v. Farr, No. 2003-03935 (2d Dep't 2003) (Florio, J.)

On September 29, 2003, petitioner filed an "Amended Petition Habeas Corpus" ("First Amended Petition") (ct. doc. 18) in which he added the three claims he raised in his third section 440 motion.

On April 28, 2004, Judge Gershon granted petitioner's request to hold his habeas petition in abeyance while he returned to state court to exhaust further his state remedies.  See ct. doc. 27.  Petitioner filed a second pro se motion for a writ of error coram nobis on May 11, 2004 raising ineffective assistance of appellate counsel for failing to argue the following claims:

1.   The distinction between reckless manslaughter and depraved mind murder is unconstitutionally vague;

2.   The trial court erred by delegating to a court officer the authority to provide the jury with physical evidence.

On September 27, 2004, the Appellate Division denied petitioner's application for a writ of error coram nobis.  People v. Farr, 10 A.D.3d 731, 781 N.Y.S.2d 918 (2d Dep't 2004).  On November 30, 2004, the Court of Appeals denied petitioner's application for leave to appeal.  People v. Farr, 3 N.Y.3d 756,

-15-

788 N.Y.S.2d 672 (2004).

On December 27, 2004, petitioner filed a second "Amended Petition Habeas Corpus" ("Second Amended Petition") (ct. doc. 29) in which he replaced earlier claims with claims later raised in his two petitions for a writ of error coram nobis as follows:

1.  Replacing "Ground D" in the "Collateral Motion Writ of Error Coram Nobis" section of his original petition concerning appellate counsel's failure to challenge the trial court's error in delegating a court officer to provide the jury with physical evidence with the claim raised in his second coram nobis petition that appellate counsel failed to argue that the distinction between the intent elements of depraved indifference murder and manslaughter in the second degree was unconstitutionally vague; and

2.  Withdrawing the claim that the trial court improperly sentenced petitioner to consecutive sentences.

On December 7, 2005, this Court granted petitioner's previously denied motion for the appointment of counsel and directed counsel to file a supplemental submission. See ct doc. 43. On March 10, 2006, counsel filed a supplemental memorandum of law alleging ineffective assistance of appellate counsel for failing to raise the claims that trial counsel was ineffective for failing to move for dismissal of the depraved indifference murder count and the trial court erred in submitting the depraved indifference murder count to the jury. See Supplemental Memorandum of Law ("Supp. Mem.") (ct. doc. 46-1).

## DISCUSSION

### I.   Applicable Law for Habeas Review

The writ of habeas corpus is available to any person held

"in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Since this petition was filed after the Antiterrorism and Effective Death Penalty Act of 1996's ("AEDPA") enactment, the provisions of AEDPA govern to the extent applicable. See Williams v. Taylor, 529 U.S. 362, 402-03 (2000); Boyette v. Lefevre, 246 F.3d 76, 88 (2d Cir. 2001).

A.    Standard of Review

AEDPA created a new standard of review intended to "place[] a new restriction on the power of federal courts to grant writs of habeas corpus to state prisoners." Williams, 529 U.S. at 399. A court reviewing a habeas petition under AEDPA may not grant a writ "with respect to any claim that was adjudicated on the merits in State court proceedings unless" the state court decision was either (1) "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or (2) "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

The two clauses of subsection (1) have "independent meaning." Williams, 529 U.S. at 364. Under the first clause, a state court decision will be considered "contrary to" federal law if it either "applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases" or "confronts a set of facts that are materially indistinguishable from a decision of

[the Supreme Court] and nevertheless arrives at a result different from [Supreme Court] precedent." <u>Williams</u>, 529 U.S. at 405-06 (O'Connor, J., concurring). "An unreasonable application of federal law is more than an incorrect application, but the petitioner need not show that all reasonable jurists would agree that a state court determination is incorrect in order for it to be unreasonable." <u>Yung v. Walker</u>, 296 F.3d 129, 135 (2d Cir. 2002). Rather, a state court's interpretation of federal law should be examined using a standard of objective reasonableness. <u>See</u> <u>id.</u>

Under the second clause, habeas relief may be granted if the state court decision "correctly identifies the governing legal rule but applies it unreasonably to the facts of a particular prisoner's case." <u>Williams</u>, 529 U.S. at 407-08. Whether a state decision is an "unreasonable application" of federal law must be based on an objective standard and relief may not be granted unless a relevant state court decision is both erroneous and unreasonable. <u>Id.</u> at 409, 411.

In reviewing findings of fact under AEDPA, federal courts must assess whether the state court's determination was based on "an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). Under this standard, a state court's determinations of fact shall be "presumed to be correct," and the habeas petitioner "shall have the burden of rebutting the

presumption of correctness by clear and convincing evidence." 28

U.S.C. § 2254(e)(1).

A state court need not set forth the legal basis for

resolution of federal claims in order for the broadly deferential

standard set out in AEDPA to apply.  See <u>Sellan v. Kuhlman</u>, 261

F.3d 303, 311-12 (2d Cir. 2001).  Rather:

> [T]he plain meaning of § 2254(d)(1) dictates [that for]
> the purposes of AEDPA deference, a state court
> 'adjudicate[s]' a state prisoner's federal claim on the
> merits when it (1) disposes of the claim 'on the
> merits,' and (2) reduces its disposition to judgment.
> When a state court does so, a federal habeas court must
> defer in the manner prescribed by 28 U.S.C.
> § 2254(d)(1) to the state court's decision on the
> federal claim -- even if the state court does not
> explicitly refer to either the federal claim or to
> relevant federal case law.

<u>Sellan</u>, 261 F.3d at 312.

B.  <u>Procedural Requirements</u>

1.  <u>Exhaustion</u>

Prior to bringing a petition for habeas corpus pursuant to

28 U.S.C. § 2254, a petitioner must exhaust the remedies

available in state court or demonstrate that "there is an absence

of available State corrective process [or] [that] circumstances

exist that render such process ineffective to protect the rights

of the applicant."  28 U.S.C. § 2254(b); <u>see</u> <u>Keeney v. Tamayo-</u>

<u>Reyes</u>, 504 U.S. 1, 9-10 (1992); <u>Rose v. Lundy</u>, 455 U.S. 509

(1982).  The exhaustion requirement is based upon the principle

of "comity," or respect for states, by giving states the first

opportunity to pass upon convictions rendered in their courts.

See Duncan v. Henry, 513 U.S. 364, 365-66 (1995); Duckworth v. Serrano, 454 U.S. 1 (1981); Ellman v. Davis, 42 F.3d 144, 147 (2d Cir. 1994).

In order to exhaust claims, petitioners must "fairly present" their constitutional claims to the highest state court. See Picard v. Connor, 404 U.S. 270, 275 (1971); Levine v. Comm'r of Corr. Servs., 44 F.3d 121, 124 (2d Cir. 1995); Daye v. Attorney General of the State of New York, 696 F.2d 186, 194 (2d Cir. 1982) (en banc). In other words, the claims presented by a petitioner to the State appellate courts must be the "substantial equivalent" of the claims he raises in the federal habeas petition. Picard, 404 U.S. at 278. A petitioner may satisfy this fair presentation requirement by (a) reliance on pertinent federal cases employing constitutional analysis, (b) reliance on state cases employing constitutional analysis in like fact situations, (c) assertion of a claim in terms so particular as to call to mind a specific right protected by the Constitution, or (d) alleging a pattern of facts that is well within the mainstream of constitutional litigation. Daye, 696 F.2d at 194; see also Strogov v. Attorney General of the State of New York, 191 F.3d 188, 191 (2d Cir. 1999).

When there is no longer any procedural mechanism by which petitioner may obtain review of his claim, it is deemed exhausted but procedurally defaulted. Harris v. Reed, 489 U.S. 255, 263 n.9 (1989); Grey v. Hoke, 933 F.2d 117, 120 (2d Cir. 1991). As

discussed further below, a procedural default will preclude habeas review unless the petitioner can establish "cause" and "prejudice." <u>Harris</u>, 489 U.S. at 263 n.9; <u>Grey</u>, 933 F.2d at 120.

### 2. Adequate and Independent State Grounds

A petitioner's failure to comply with state procedural rules may be a basis for precluding habeas review under the "adequate and independent" grounds doctrine. <u>See</u> <u>Coleman v. Thompson</u>, 501 U.S. 722, 726 (1991); <u>Harris</u>, 489 U.S. at 261-63; <u>Gonzalez v. Sullivan</u>, 934 F.2d 419, 421 (2d Cir. 1991). This rule barring federal habeas courts from addressing the merits of procedurally defaulted claims arises out of principles of comity and the need for finality. <u>See</u> <u>McCleskey v. Zant</u>, 499 U.S. 467, 493 (1991).

However, a state court judgment will not constitute an adequate and independent state procedural ground unless the state court "clearly and expressly" states that the "judgment rests on a state-law ground that is both 'independent' of the merits of the federal claim and an 'adequate' basis for the court's decision." <u>Harris</u>, 489 U.S. at 260 (citations omitted); <u>Epps v. Comm'r of Corr. Servs.</u>, 13 F.3d 615, 617 (2d Cir. 1994).

### 3. Procedural Default

Where a petitioner has procedurally defaulted by failing to raise a claim on direct review or where other adequate and independent state grounds provide the basis for the state decision, the claims are deemed exhausted for the purpose of federal habeas petitions because no state review is available.

_Bossett v. Walker_, 41 F.3d 825, 829 (2d Cir. 1994). Such claims may be reviewed on the merits only if the petitioner can demonstrate "cause" and actual "prejudice." _Murray v. Carrier_, 477 U.S. 478, 485-86 (1986); _Wainwright v. Sykes_, 433 U.S. 72, 87 (1977); _Bossett_, 41 F.3d at 829. In order to demonstrate "cause," the petitioner must "show that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." _Murray_, 477 U.S. at 488. Counsel's failure to recognize the factual or legal basis for a claim, or failure to raise a claim, does not in itself constitute "cause" for a procedural default. _Id._ at 486-87.

In establishing prejudice, petitioner must demonstrate "pervasive actual prejudice," that is, not merely a showing of trial errors creating a "_possibility_ of prejudice, but that they worked to his _actual_ and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." _Murray_, 477 U.S. at 494 (emphasis in original) (quoting _United States v. Frady_, 456 U.S. 152, 170 (1982)).

If a litigant cannot establish cause and prejudice, he may nonetheless bring the claim if there is a "fundamental miscarriage of justice," _see_ _Washington v. James_, 996 F.2d 1442, 1447 (2d Cir. 1993), which is generally shown only by proving that he is "actually innocent." _Murray_, 477 U.S. at 496; _Smith v. Murray_, 477 U.S. 527, 537 (1986); _see_ _Spence v. Superintendent, Great Meadow Corr. Facility_, 219 F.3d 162, 170

(2d Cir. 2000); <u>Strogov</u>, 191 F.3d at 193.

II.  <u>Failure to Sentence for Reckless Endangerment</u>

　　　Petitioner argues that the trial court erred in failing to sentence him on the count of reckless endangerment in the first degree for which he was convicted.  <u>See</u> Petition at 5, "Ground one."  This claim is meritless, since the trial court had granted petitioner's motion to dismiss that count prior to sentencing and was not required to sentence petitioner on that count.  <u>See</u> Sentencing Transcript ("S. Tr.") at 2-3; <u>People v. Lum</u>, 102 A.D.2d 992, 477 N.Y.S.2d 860 (3d Dep't 1984) (remitting for resentencing for all but dismissed count); <u>People v. Shackleford</u>, 91 A.D.2d 1205, 459 N.Y.S.2d 417 (4th Dep't 1983) (vacating sentences on counts of indictment that were dismissed).  Indeed, petitioner later faults appellate counsel for raising this claim on direct appeal, which he describes as a "meritless issue." Petition at 12, "Collateral Motion Writ of Error Coram Nobis, Ground One(A)."

　　　Since the trial court did not err, the Appellate Division's decision that this claim "is without merit" neither was contrary to, nor involved an unreasonable application of, clearly established federal law.

III. <u>Weapon Possession Conviction As Inclusory Count</u>

　　　Petitioner argues that his conviction for criminal possession of a weapon in the second degree must be dismissed because it is a lesser included offense of murder in the second

degree and attempted assault in the first degree for which petitioner was also convicted.  See Petition at 5, "Ground two."

Where a defendant violates two separate criminal statutes, the Double Jeopardy Clause is implicated when one offense is a lesser included offense of the other.  See Rutledge v. United States, 517 U.S. 292, 297 (1996); Aparicio v. Artuz, 269 F.3d 78, 96 (2d Cir. 2001).  To determine whether the Double Jeopardy Clause is violated, the court must consider "whether each provision requires proof of a fact which the other does not." Rutledge, 517 U.S. at 297; Blockburger v. United States, 284 U.S. 299, 304 (1932).  If that is the case, "then 'there are two offenses, and it is presumed that the legislature intended to authorize prosecution and punishment under both.'"  Aparicio, 269 F.3d at 97 (quoting United States v. Khalil, 214 F.3d 111, 118 (2d Cir. 2000)).

The elements of criminal possession of a weapon in the second degree are: (1) possession of a firearm; (2) that is loaded and operable; and 3) with intent to use it unlawfully against another.  Aparicio, 269 F.3d at 97; N.Y. Penal Law § 265.03.  "[O]nce the unlawful possession of the weapon is established, the possessory crime is complete and any unlawful use of the weapon is punishable as a separate crime."  People v. Pons, 68 N.Y.2d 264, 266, 508 N.Y.S.2d 403 (1986); People v. Almodovar, 62 N.Y.2d 126, 130, 476 N.Y.S.2d 95 (1984); People v. Bellamy, 247 A.D.2d 627, 669 N.Y.S.2d 353 (2d Dep't 1998); People

v. Mitchell, 216 A.D.2d 863, 863, 628 N.Y.S.2d 914 (4th Dep't 1995).

Since weapons possession does not require that the defendant caused the death of another person, see N.Y. Penal Law § 265.03, and second degree murder does not require possession of a gun, see N.Y. Penal Law § 125.25, each offense "requires proof of a fact that the other does not." Blockburger, 284 U.S. at 304. Accordingly, weapons possession is not a lesser included offense of second degree murder. See People v. Thomas, 299 A.D.2d 942, 750 N.Y.S.2d 417 (4th Dep't 2002); People v. Davis, 95 A.D.2d 837, 436 N.Y.S.2d 876 (2d Dep't 1983). Similarly, weapons possession does not require that the defendant caused serious physical injury to another person, see N.Y. Penal Law § 265.03, and attempted assault does not require possession of a gun, see N.Y. Penal Law § 110.00/120.10. Thus, weapons possession is not a lesser included offense of attempted assault in the first degree. See Mitchell, 216 A.D.2d at 863; People v. Sykes, 194 A.D.2d 502, 599 N.Y.S.2d 566 (1st Dep't 1993); People v. Miller, 168 A.D.2d 642, 564 N.Y.S.2d 452 (2d Dep't 1990); People v. Fournier, 70 A.D.2d 491, 421 N.Y.S.2d 368 (2d Dep't 1979).

Therefore, the trial court did not err and the Appellate Division's decision is neither contrary to, nor an unreasonable application of, clearly established federal law.

IV. Missing Witness Charge

Petitioner argues that the trial court erred in denying his

request for a missing witness charge with respect to Barry London and Mark Williams.[5]  <u>See</u> Petition at 6, "Ground four."  The trial court found that although those witnesses were likely to be hostile to the defense and were available, their testimony would be cumulative and border on immaterial since they did not witness the shooting.  Tr. at 423, 434-35, 480-81.  Nonetheless, the court permitted defense counsel to refer to those witnesses in summation.  <u>Id.</u> at 435.  The Appellate Division affirmed on the ground that the witnesses were not knowledgeable about any material issue.  <u>Farr</u>, 262 A.D.2d at 656.

Generally, a state trial court's failure to issue a missing witness charge is a matter of state law.  <u>See</u> <u>Wright v. Marshall</u>, No. 05 CV 2280, 2005 WL 1861633, at *4 (E.D.N.Y. 2005); <u>Castro v. Fisher</u>, No. 04 Civ. 0346, 2004 WL 1637920, at *17 (S.D.N.Y. 2004); <u>Morales v. Walsh</u>, No. 02 CV 6045, 2003 WL 23185770, at *14 (E.D.N.Y. 2003).  In order to obtain habeas relief on such a claim, petitioner must show not only that the lack of instruction was "undesirable, erroneous, or even 'universally condemned,'" but also that "the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process."

---

[5] Defense counsel also referred to a third missing witness, Gary Sawyer, but did not discuss why a missing witness charge was required for Sawyer.  Tr. at 418.  Nor did appellate counsel raise the issue of Sawyer's absence, although he does refer to "three uncalled witnesses" in the appeal brief.  Appellant's Brief (Resp. Exh. A) at 16-22.  In his petition, petitioner refers to "three witnesses," but specifically mentions only Barry London and Mark Williams.  Petition at 6, "Ground three."

Cupp v. Naughten, 414 U.S. 141, 146-47 (1973). "'Whether a missing witness charge should be given lies in the sound discretion of the trial court.'" Reid v. Senkowski, 961 F.2d 374, 377 (2d Cir. 1992) (quoting United States v. Torres, 845 F.2d 1165, 1170-71 (2d Cir. 1988)). The trial court's "decisions in this area will rarely support reversal of habeas relief since reviewing courts recognize 'the aura of gamesmanship that frequently accompanies requests for a missing witness charge as to which the trial judge will have a surer sense' than any reviewing court." Malik v. Kelly, No. 97 Civ. 4543, 1999 WL 390604, at *7 (E.D.N.Y. Apr. 6, 1999) (quoting Torres, 845 F.2d at 1171).

Under New York law, to obtain a missing witness instruction: 1) "the witness's knowledge must be material to the trial;" 2) "the witness must be expected to give noncumulative testimony favorable to the party against whom the charge is sought;" and 3) "the witness must be available to that party." People v. Macana, 84 N.Y.2d 173, 196, 615 N.Y.S.2d 656 (1994); see People v. Gonzalez, 68 N.Y.2d 424, 427, 509 N.Y.S.2d 796 (1986). Here, although Mark Williams and Barry London were in the park at the time of the shooting, neither witness was material since neither saw the gun or the shooter, Tr. at 428-29, 480-82, the critical issue in the trial. See Wright, 2005 WL 1861633, at *5 (denying habeas relief where missing witness had no material knowledge of petitioner's identity); Fauntleroy v. Artuz, No. 00-CV-2209, 2003

WL 22670906, at *7 (E.D.N.Y. 2003) (denying missing witness
instruction was reasonable where witness did not witness
shooting); Goberdhan v. Greiner, No. 00 CV 1198, 2003 WL
22670892, at *4 (E.D.N.Y. Oct. 30, 2003) (Appellate Division
holding that missing witness that was unable to identify shooters
was not knowledgeable about a material issue was reasonable);
People v. Gilmore, 270 A.D.2d 286, 704 N.Y.S.2d 603 (2d Dep't
2000) (defendant not entitled to missing witness instruction
where he failed to establish that witness was knowledgable about
defendant's identity as perpetrator).  As petitioner argued on
appeal, the "dispositive issue at trial [was] who shot the
decedent."  Appellant's Brief at 21.  However, he also argued at
trial and on appeal that the testimony of the missing witnesses
would concern when the first encounter between petitioner and the
victim occurred and the vantage point of the two eyewitnesses who
testified at trial.

Moreover, the trial court correctly concluded that London's
and Williams's testimony would have been cumulative of the
testimony of the two eyewitnesses who testified at trial.  Since
London and Williams were with the two witnesses who testified at
trial when the shooting occurred, their testimony likely would
have been cumulative to the other testimonial evidence.  See
Nenni, 2004 WL 1858138, at *12 (missing witness who was riding in
van with testifying witness would have provided cumulative
testimony); People v. Ortiz, 83 N.Y.2d 989, 990, 616 N.Y.S.2d 333

(1994) (affirming trial court's refusal to give missing witness instruction for nontestifying police officer who was near scene of buy and bust transaction because it would have added only cumulative evidence); People v. Paschke, 257 A.D.2d 581, 682 N.Y.S.2d 896 (2d Dep't 1999) (trial court properly denied request for missing witness charge because it would have been cumulative to testimony of seven other eyewitnesses).  In any event, even though the missing witnesses might have had a slightly different vantage point of the events surrounding the shooting, it is well established that the mere failure to produce an eyewitness at trial does not justify a missing witness charge.  Nenni v. Costello, No. 02-CV-6116, 2004 WL 1858138, at *12 (W.D.N.Y. Aug. 13, 2004); Fauntleroy, 2003 WL 22670906, at *7 n.2.

Further, in order to warrant habeas relief, petitioner must demonstrate that any constitutional error "had substantial and injurious effect or influence in determining the jury's verdict, and that the error resulted in "actual prejudice."  O'Neal v. McAninch, 513 U.S. 432, 436-38 (1995); Brecht v. Abrahamson, 507 U.S. 619, 637 (1993).  In this case, any error in the court's refusal to administer a missing witness charge was harmless.  The trial court permitted defense counsel to refer to the missing witnesses in his summation.  Tr. at 435.  In fact, counsel argued that the jury should infer that they did not testify because they would have contradicted Alan Lucas's testimony.  Tr. at 655-56. Since defense counsel was permitted to emphasize those witness's

absence in summation, there is no prejudice to petitioner.  <u>See</u>
<u>United States v. Mittelstaedt</u>, 31 F.3d 1208, 1215 (2d Cir. 1994);
<u>Torres</u>, 845 F.2d at 1171; <u>Reyes v. Miller</u>, No. CV-04-3653, 2005
WL 3576841, at *5 (E.D.N.Y. 2005); <u>Ramos v. Phillips</u>, No. 05 CV
0023, 2005 WL 1541046, at *9 (E.D.N.Y. 2005).  Moreover, given
the strong evidence of petitioner's guilt, including the
testimonies of Lucas and Joseph  (who saw petitioner shoot
Howard), Karen Hodges (who corroborated the details of the events
leading to the shooting) and Leroy Jones (to whom petitioner
admitted having shot a person), any error is harmless.  <u>See</u>
<u>Christodoulou v. Duncan</u>, No. 99 CV 1847, 2005 WL 990999, at *9
(E.D.N.Y. Apr. 14, 2005); <u>Campbell v. Fischer</u>, 275 F. Supp. 2d
321, 330 (E.D.N.Y. 2003); <u>Brown v. Breslin</u>, No. 02-CV-6044, 2003
WL 22952841, at *9 (E.D.N.Y. Nov. 26, 2003).

Therefore, the trial court's denial of petitioner's request
for a missing witness charge and the Appellate Division's
affirmance were neither contrary to nor an unreasonable
application of federal law.

V.    <u>Witness Holding Child on Lap During Testimony</u>

Petitioner argues that the trial court erred in permitting
the victim's child to sit on her mother's lap during her
testimony.  Petition at 6, "Ground four."  At trial, defense
counsel moved for a mistrial claiming that the child's presence
"evinc[ed] sympathy for the deceased."  Tr. at 77.  Denying the
motion, the trial judge explained that he had directed a police

officer who had been caring for Beatrice Howard's baby to bring the crying child to its mother while she testified in order to avoid "further distraction." Tr. at 77-78. The Appellate Division affirmed, holding that petitioner's claim of error was "without merit." 262 A.D.2d at 656.

Generally, "[a] trial judge possesses wide latitude to maintain control over the courtroom to ensure the integrity of the proceedings." Gilliam v. Foster, 75 F.3d 881, 900 (4th Cir. 1996); see Boothe v. Superintendent, Woodbourne Corr. Facility, 656 F.2d 27, 30 n.4 (2d Cir. 1981) (trial court has discretion to preserve order in the courtroom). "A judge's ordinary efforts at courtroom administration . . . remain immune." Liteky v. United States, 510 U.S. 540, 555-56 (1994). However, federal courts must be cognizant of "the effect of courtroom practices on defendants' fair trial rights." Carey v. Musladin, 127 S.Ct. 649, 653 (2006). As the Supreme Court explained in Holbrook v. Flynn, 475 U.S. 560 (1986):

> Central to the right of a fair trial, guaranteed by the Sixth and Fourteenth Amendments, is the principle that 'one accused of a crime is entitled to have his guilt or innocence determined solely on the basis of the evidence introduced at trial, and not on grounds of official suspicion, indictment, continued custody, or other circumstances not adduced as proof at trial.' Taylor v. Kentucky, 436 U.S. 478, 485 (1978).

Id. at 567. Nonetheless, federal courts in habeas review have a circumscribed role when reviewing a constitutional challenge to state court proceedings and are limited to "determin[ing] whether what [the jurors] saw was so inherently prejudicial as to pose an

unacceptable threat to defendant's right to a fair trial; if the challenged practice is not found inherently prejudicial and if the defendant fails to show actual prejudice, the inquiry is over." Id. In other words, "[a] trial judge's intervention in the conduct of a criminal trial would have to reach a significant extent and be adverse to the defendant to a substantial degree before the risk of either impaired functioning of the jury or lack of the appearance of a neutral judge conducting a fair trial exceeded constitutional limits." See Daye v. Attorney General, 712 F.2d 1566, 1570 (2d Cir. 1983).

Petitioner has not established that the trial court's decision to allow the victim's infant child to sit on her mother's lap during her testimony was so inherently prejudicial as to impair petitioner's fundamental right to a fair trial. After having the crying child brought to her mother on the witness stand, the trial judge found that the child was well behaved and not a distraction. Tr. at 77-78.[6] The state court's finding is presumed to be correct. See 28 U.S.C. § 2254(d). As defense counsel recognized in moving for a mistrial, "I understand what Your Honor did with regard to the fact there would have been disruption in the courtroom." Tr. at 77. Under

_____

[6] The facts underlying the claim are set forth in the colloquy between defense counsel and the trial judge after the witness's testimony since the transcript of the mother's testimony does not contain any discussion regarding the child or reflect that there was a break in testimony to permit the child to join her mother on the witness stand. Tr. 13-15, 77-78.

such circumstances, the trial judge's ruling was well within his broad discretion in maintaining courtroom decorum.  See Illinois v. Allen, 397 U.S. 337, 343 (1970); People v. Yut Wai Taom, 53 N.Y.2d 44, 57, 439 N.Y.S.2d 896, 903 (1981) (trial judge has "vital role in . . . facilitating the orderly and expeditious progress of the trial").  More importantly, although the practice at issue may have engendered sympathy for the victim, given the brevity of the testimony and the reason that the trial court permitted the child to sit on her mother's lap, this Court finds that the practice was not so "inherently prejudicial as to pose an unacceptable threat to defendant's right to a fair trial . . ."  Holbrook, 476 U.S. at 572.  The facts of this case stand in contrast to the practices that the Supreme Court has found to be so prejudicial to fair trial rights which have concerned "the possible impairment of the presumption [of innocence] so basic to the adversary system."  Estelle v. Williams, 425 U.S. 501, 504 (1976).  In Williams, the Supreme Court noted that because the continuous wearing of prison garb by a defendant may affect a juror's judgment, a "State cannot, consistently with the Fourteenth Amendment, compel an accused to stand trial before a jury while dressed in identifiable prison clothes.  Id. at 512; see also Allen, 397 U.S. at 344 (recognizing that "the sight of shackles and gags might have a significant effect on the jury's feelings about the defendant . . .")

Moreover, any error by the trial judge did not cause actual

prejudice to petitioner. Ms. Howard's testimony was very brief
and related only to her identification of the decedent's body in
the morgue.[7] Tr. at 13-15. Moreover, the jury would have
associated Ms. Howard with the child in any event because after
her testimony Beatrice Howard returned to the courtroom with her
baby. Tr. at 78. Furthermore, the court instructed the jury not
to allow sympathy to enter into the deliberations and to make its
determination solely based on the evidence admitted at trial.
Tr. at 693-94. Such instructions mitigated any effect the
child's presence had on the jury. See Moore v. Gibson, 195 F.3d
1152, 1173 (10th Cir. 1999) (prejudice from prosecutor's improper
remarks designed to elicit sympathy for victim was mitigated by
jury instructions); see also United States v. Mickens, 926 F.2d
1323 (2d Cir. 1991) (any prejudice caused by court's comments was
cured by cautionary instruction). Thus, petitioner has failed to
demonstrate that the child's presence prejudiced him in any way

---

[7] Petitioner mistakenly relies on People v. Harris, 44
A.D.2d 809, 355 N.Y.S.2d 770 (1st Dep't 1974), where the court
found that "it was highly prejudicial to permit one of the
complaining witnesses to testify while holding her infant child
in her arms." 44 A.D.2d at 810. However, the above finding is
dicta as the court primarily relied on the trial judge's improper
questioning of witnesses and comments on the testimony in
concluding that the defendant did not receive a fair and
impartial trial. Id. at 809-10. In any event, to warrant habeas
relief, a petitioner must demonstrate a violation of clearly
established federal law, as determined by the Supreme Court, not
state law. See Shabazz v. Artuz, 336 F.3d 154, 161 (2d Cir.
2003); see also Wilkerson v. Klem, 412 F.3d 449, 452 (3d Cir.
2005) (error under state law precedents not sufficient to warrant
habeas relief); Williams v. Coyle, 260 F.3d 684, 703 (6th Cir.
2001).

or prevented him from receiving a fair trial. <u>Cf.</u> <u>Lloyd v.</u>
<u>Riley</u>, No. CV-88-2847, 1990 WL 59592, at *2 (E.D.N.Y. May 30,
1990) (no prejudice where trial court permitted witness to wear
Navy uniform during testimony).

Similarly, given the strong evidence of petitioner's guilt,
as previously discussed, any error was harmless. <u>See</u> <u>Brecht</u>, 507
U.S. at 637. Thus, the trial court's decision to permit the
victim's child to sit on her mother's lap during her testimony,
and the Appellate Division's affirmance, were neither contrary to
nor an unreasonable application of clearly established federal
law.

VI. <u>Suggestiveness of Line-up</u>

Petitioner claims that his line-up identification was unduly
suggestive because a police officer asked only the petitioner to
smile at the request of a witness. Petition at 10, "Post
Conviction Motion 440, Ground Four(D)." The section 440 court
rejected this claim on the grounds that any such request was
initiated by a civilian witness and not the police officer
conducting the line-up. The court also ruled that the issue was
unpreserved because it was not raised at the <u>Wade</u> hearing, as
required by N.Y. Crim. Proc. Law § 440.10(3)(a).

As a preliminary matter, respondent misconstrues
petitioner's claim as one arising under the Fourth Amendment and
incorrectly argues the claim is barred from habeas review. <u>See</u>
Respondent's Mem. of Law (ct. doc. 22) at 54-55 (citing <u>Stone v.</u>

<u>Powell</u>, 428 U.S. 465 (1976)).  On the contrary, petitioner's claim challenging the suggestiveness of his line-up is properly brought under the Due Process Clause.  Petition at 10, "Post Conviction Motion 440, Ground Four(D);" <u>see</u> <u>Manson v. Brathwaite</u>, 432 U.S. 98, 114 (1977); <u>Neil v. Biggers</u>, 409 U.S. 188, 199 (1972); <u>Raheem v. Kelly</u>, 257 F.3d 122, 133 (2d Cir. 2001).  Respondent mistakenly relies on <u>Chavis v. Henderson</u>, 638 F.2d 534 (2d Cir. 1980) for the proposition that this claim is unreviewable by a habeas court, a case where the petitioner argued that since his arrest was without probable cause, the identification evidence should be excluded.  Here, in contrast, petitioner challenges the identification testimony on due process grounds, not as the fruit of an illegal arrest.  Thus, the bar to habeas relief enunciated by the Supreme Court in <u>Stone v. Powell</u> does not apply to this claim.

Alternatively, respondent argues that this claim is procedurally barred because it was denied by the state court on an adequate and independent state ground.  In denying petitioner's motion to vacate, the state court rejected petitioner's claim on the merits and on procedural grounds, stating:

> Having had the opportunity to create a record which would provide an adequate basis for review of this claim, and having failed to do so, without any justification being offered for such failure [See, CPL 440.10(3)(a)] the motion must be denied on this ground.

New York Supreme Court Memorandum Decision dated June 6, 2000 at

7-8 (Resp. Exh. F).

The state court "clearly and expressly" relied on a state procedural ground, N.Y. Crim. Proc. Law § 440.10(3)(a), that is independent of and was in addition to, its ruling on the merits of petitioner's claim. Moreover, federal courts have found that section 440.10(3)(a) is an adequate and independent procedural bar to preclude federal habeas review. See Collins v. Superintendent Conway, No. 04 Civ. 4672, 2006 WL 1114053, at *3 (S.D.N.Y. Apr. 26, 2006); Young v. McGinnis, 411 F. Supp. 2d 278, 331 (E.D.N.Y. 2006); Pujols v. Greiner, No. 98 Civ. 0373, 2001 WL 477046, at *7 (S.D.N.Y. May 4, 2001). Accordingly, this claim is procedurally barred even though "the state court has also ruled in the alternative on the merits of the federal claim." Velasquez v. Lenoardo, 898 F.2d 7, 9 (2d Cir. 1990); see Harris v. Reed, 489 U.S. at 264 n.10 (adequate and independent doctrine "curtails reconsideration of the federal issue on federal habeas as long as the state court explicitly invokes a state procedural bar rule as a separate basis for decision"); Glenn v. Bartlett, 98 F.3d 721, 724-25 (2d Cir. 1996); Collins v. Superintendent Conway, 2006 WL 1114053, at *3.

Because of petitioner's procedural default, he must show cause and prejudice or a fundamental miscarriage of justice in order for the court to consider these claims on the merits. Coleman, 501 U.S. at 735; Murray, 477 U.S. at 488. Petitioner cannot satisfy either legal standard.

"Cause" for a procedural default exists where a petitioner can show that 1) "the factual or legal basis for a claim was not reasonably available to counsel," 2) "some interference by state officials made compliance impracticable," or 3) "the procedural default is the result of ineffective assistance of counsel." Murray, 477 U.S. at 488; Bossett, 41 F.3d at 829. Here, petitioner cannot establish "cause" for failing to exhaust his claim. The factual or legal bases for his claim were reasonably available at the time of his Dunaway hearing and petitioner does not allege interference by state officials. Although petitioner does attack trial counsel's effectiveness for failure to raise this claim, because he fails to establish trial counsel's ineffectiveness, see infra at 39-42, 79-80, he cannot show cause for his procedural default. See Murray, 477 U.S. at 492 ("Attorney error short of ineffective assistance of counsel does not constitute cause for a procedural default").

Alternatively, a federal habeas court may excuse a procedural default if the petitioner shows that failure to review will result in "a fundamental miscarriage of justice." Edwards, 529 U.S. at 451. This means that petitioner has the burden of showing he is actually innocent and must "support his allegations of constitutional error with new reliable evidence – whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence – that was not presented at trial." Schlup v. Delo, 513 U.S. 298, 324 (1995). Here,

petitioner has not offered any new evidence demonstrating his actual innocence and, therefore, he has not made an adequate showing to satisfy the fundamental miscarriage of justice standard.

As petitioner cannot show cause for his procedural default, this Court need not reach the question of whether petitioner can show prejudice. See Stepney v. Lopes, 760 F.2d 40, 45 (2d Cir. 1985); Staley v. Greiner, No. 01 CIV. 6165, 2003 WL 470568, at *6 (S.D.N.Y. Feb. 6, 2003); Lewis v. Batista, No. 01 CIV. 4316, 2002 WL 31202712, at *8 (S.D.N.Y. Aug. 30, 2002). However, I briefly address the merits since petitioner claims ineffective assistance of trial counsel for failure to raise this claim at the Wade hearing, as well as ineffective assistance of appellate counsel.

Due process requires the exclusion of identification testimony which is so unreliable as to create "a very substantial likelihood of irreparable misidentification." Manson, 432 U.S. at 116. To be admissible, the court must find either that the identification procedures were not unduly suggestive or that the identification was independently reliable despite any unnecessarily suggestive procedure. See Manson, 432 U.S. at 114; Neil, 409 U.S. at 199; Raheem, 257 F.3d at 133.

Petitioner fails to demonstrate that the identification procedure used in this case was unduly suggestive. First, petitioner's claim that Detective Schwartz asked him to smile

-39-

during the line-up is belied by the record.  According to the
testimony adduced at the <u>Wade</u> hearing and the trial court's
factual findings, Detective Schwartz rejected Joseph's request
for petitioner to open his mouth.  Hearing Tr. at 39-40, 87-88,
131.  Moreover, even if Detective Schwartz did ask petitioner to
open his mouth, petitioner concedes, and the record reflects,
that he never opened his mouth during the line-up.  Petition at
10, "Post Conviction Motion 440, Ground Four(D);" Motion to
Vacate at 9 (Resp. Exh. D); Tr. at 186-87.  Since petitioner did
not open his mouth and reveal his damaged tooth, he was not
distinguishable from the other participants in the line-up and
there was no suggestiveness created.  <u>See</u> <u>Rahman</u>, 257 F.3d at
133-34 ("If the procedures were not suggestive, the
identification evidence presents no due process obstacle to
admissibility"); <u>Jarrett v. Headley</u>, 802 F.2d 34, 42 (2d Cir.
1986).  Moreover, the trial court found and it is undisputed that
Joseph initiated the request that petitioner open his mouth
without any prompting by the police.  Absent a claim that the
police employed an improper procedure or somehow caused a witness
to focus on petitioner, petitioner cannot establish undue
suggestiveness.  <u>See</u> <u>Reese v. Fulcomer</u>, 946 F.2d 247 (3d Cir.
1991); <u>United States v. Stevens</u>, 935 F.2d 1380, 1390 n.11 (3d
Cir. 1991) ("[I]n order to establish that a pre-trial
confrontation was unduly suggestive, the defendant must first
show that the government's agents arranged the confrontation or

took some action during the confrontation which singled out the defendant").  The witness apparently was already focused on petitioner when making the request that petitioner open his mouth.

In any event, Joseph's prior familiarity with petitioner provided an independent basis for ensuring the reliability of his line-up and in-court identifications.  See Alvarez v. Conway, No. 05 Civ. 3235, 2005 WL 3434634, at *2, *7 (S.D.N.Y. 2005) (denying habeas relief where witness had seen petitioner in her apartment building a few days before the robbery); Brown v. Miller, No. 04 CIV 9804, 2005 WL 1773683, at *6-*7 (S.D.N.Y. 2005) (denying habeas relief since witness knew petitioner from the neighborhood).  As both New York and federal courts have recognized, in-court and line-up identifications may be admissible despite prior suggestive procedures if the witness knew the defendant.  See Raheem, 257 F.3d at 133 ("If the court finds . . . that the procedures were suggestive, it must then determine whether the identification was nonetheless independently reliable"); People v. Rodriquez, 79 N.Y.2d 445, 449-50, 583 N.Y.S.2d 814 (1992).  Although the issue of independent reliability was not raised at the Dunaway hearing, both Joseph and Lucas testified that they had seen petitioner in the neighborhood before the day of the shooting, as well as earlier on the day of the shooting.  Tr. at 169, 207, 209, 232, 328-29, 365-66.

Finally, given the strong evidence of petitioner's guilt in addition to Joseph's testimony, any error was harmless.  See Brecht, 507 U.S. at 637.

VII. Right to Counsel Claim

Petitioner argues that his Sixth Amendment rights were violated because his right to counsel had attached prior to his interrogation and line-up, the results of which should have been suppressed.  Petition at 10, "Post Conviction Motion 440, Ground Three(C)."  In denying petitioner's motion to vacate, the trial court held that "[h]is position is baseless since there is simply no evidence that a complaint was ever filed in this case prior to the defendant's arrest.  The right to counsel had not indelibly attached since the matter was still in the investigatory stage when he was placed in the line-up and when he made any statements to law enforcement personnel."  New York Supreme Court Memorandum Decision dated June 6, 2000 (Resp. Exh. F.) at 6.  In his application for habeas relief, petitioner further argues that his right to an attorney attached when he became the "focus" of the police investigation into Howard's shooting.  See Petition at 10, "Post Conviction Motion 440, Ground Three(C)."  Petitioner also adds that his right to an attorney had attached because the police knew he was represented by counsel on an unrelated case. See id.

A defendant's Sixth Amendment right to counsel does not attach before "the initiation of adversary judicial criminal

proceedings -- whether by way of formal charge, preliminary hearing, indictment, information or arraignment." <u>Kirby v. Illinois</u>, 406 U.S. 682, 689 (1972); <u>see</u> <u>Patterson v. Illinois</u>, 487 U.S. 285, 290 (1988); <u>United States v. Yousef</u>, 327 F.3d 56, 140 (2d Cir. 2003). Petitioner contends that a felony complaint had been filed against him, but, as the state court found, "there is simply no evidence that a complaint was ever filed in this case prior to the defendant's arrest." Because the state court's factual finding is presumed to be correct, <u>see</u> 28 U.S.C. § 2254(d), and is not rebutted by clear and convincing evidence, <u>see</u> 28 U.S.C. § 2254(e)(1), there is no basis for petitioner's claim that he had a right to counsel prior to his interrogation and line-up.

Petitioner also claims that his right to counsel attached when he became the "focus" of the police investigation, citing <u>Escobedo v. Illinois</u>, 378 U.S. 478 (1964). However, the Supreme Court has limited <u>Escobedo</u> to its own facts which are very different from those at issue here. <u>See</u> <u>Johnson v. New Jersey</u>, 384 U.S. 719, 733-34 (1966) (<u>Escobedo</u> held only that statement elicited during custodial interrogation may not be admitted at trial where the investigation is focused on a suspect, the suspect has requested and been denied an opportunity to consult a lawyer, and the police have not advised him of his right to remain silent); <u>see</u> <u>also</u> <u>Davis v. United States</u>, 512 U.S. 452, 456-57 (1994) ("before proceedings are initiated a suspect in a

criminal investigation has no constitutional right to the
assistance of counsel").

Finally, petitioner claims that his right to counsel was
violated because the police knew that he was represented by
counsel in an unrelated case. However, it is well established
that the Sixth Amendment right to counsel is offense specific so
that it attaches only to the specific charges for which
adversarial proceedings have been initiated. See Texas v. Cobb,
532 U.S. 162, 164-68 (2001); McNeil v. Wisconsin, 501 U.S. 171,
175 (1991); see also Boyd v. United States, 555 F.2d 56 (2d Cir.
1977) (suspect who had counsel for other pending charges had no
right to counsel during show-up identification on another
charge); Shepherd v. Portunda, Nos. 99-CV-1866 (JBW), 03-MISC-
0066 (JBW), 2003 WL 22964538, at *7 (E.D.N.Y. Nov. 10, 2003) (no
infringement of petitioner's federal constitutional right to
counsel when petitioner participated in a lineup without counsel
who represented him in another case).

In any event, even if petitioner had a Sixth Amendment right
to counsel that attached prior to the interrogation and line-up,
his claim fails because he does not contest waiving his right to
counsel after receiving Miranda warnings prior to the
interrogation and line-up does not claim that he requested
counsel at any time.[8]  It is well settled that "the attachment of

_____

    [8] While petitioner's right to counsel claim is not brought
under the Fifth Amendment, such a claim would also fail for the
                                                  (continued...)

the right to counsel, by itself, does not preclude a defendant from validly waiving his right to counsel."  <u>Yousef</u>, 327 F.3d at 140; <u>see</u> <u>Patterson</u>, 487 U.S. at 298, 300 (holding admissible statements given after indictment where defendant had been given <u>Miranda</u> warnings and had not asked for counsel).

More importantly, since the prosecution did not introduce petitioner's statements at trial, any error regarding their admissibility would be harmless.  <u>See</u> <u>Marsh v. Duncan</u>, No. 01 CV 1314, 2004 WL 86412, at *8 (E.D.N.Y. 2004) ("the government chose not to introduce [petitioner's statement], making this a definitive example of, at worst, harmless error"); <u>see</u> <u>also</u> <u>Michigan v. Harvey</u>, 494 U.S. 344, 345 (1990) (inadmissiblity of statement taken in violation of defendant's Sixth Amendment right to counsel is limited to prosecution's case-in-chief).  Likewise, there is no prejudice from the line-up, since "the purpose for which counsel must be present is essentially to see that the line-up procedure is itself adequate to avoid improper suggestion."  <u>United States v. Tolliver</u>, 569 F.2d 724, 727 (2d Cir. 1978).  As discussed above, there is no merit to petitioner's claim of undue suggestiveness and the witness's in-court and line-up identifications are independently reliable.

In sum, the state court's conclusion that petitioner's Sixth

_____

[8](...continued)
same reasons.  See <u>Stansbury v. California</u>, 511 U.S. 318, 321 (1994); <u>Colorado v. Connelly</u>, 479 U.S. 157, 168 (1986); <u>Edwards v. Arizona</u>, 451 U.S. 477, 484-85 (1981).

Amendment right to counsel was not violated was neither contrary to nor an unreasonable application of clearly established federal law.

VIII.    <u>Weight of the Evidence and Insufficient Evidence to Prove the Intent Element of Depraved Indifference Murder</u>

Petitioner claims, as he raised in his first section 440 motion, that (1) that there was insufficient evidence at trial to prove beyond a reasonable doubt the intent element of depraved indifference murder and (2) the verdict was against the weight of the evidence.  Petition at 9, 10-11, "Post Conviction Motion 440, Ground Two(B)" and "Ground Five(E)."  The state court rejected both claims on procedural grounds, holding that petitioner was barred from raising the sufficiency claim by N.Y. Crim. Proc. Law § 440.10(2)(c) for failure to raise the claim on direct appeal. The court also denied petitioner's weight of the evidence claim pursuant to N.Y. Crim. Proc. Law § 470.15(5) because the Appellate Division alone has jurisdiction over weight of the evidence claims.  Both procedural bars are independent and adequate state grounds sufficient to bar habeas review.  <u>See Garcia v. Lewis</u>, 188 F.3d 71, 78-79 (2d Cir. 1999).

However, since petitioner claims ineffective assistance of appellate counsel for failure to raise these claims, I discuss whether petitioner's procedural default would result in actual prejudice to him.

It is well established that a weight of the evidence claim

is grounded in N.Y. Crim. Proc. Law § 470.15 and thus unreviewable in a habeas proceeding for not presenting a federal constitutional issue. See Fils-Amie v. Fischer, No. 03 Civ. 939, 2007 WL 117777, at *4 (S.D.N.Y. Jan. 16, 2007); Santana v. Poole, No. CV-03-3946, 2006 WL 3483923, at *9 (E.D.N.Y. Nov. 30, 2006); see also Ex Parte Craig, 282 F. 138, 148 (2d Cir. 1922).

Although a sufficency of the evidence claim is subject to habeas review, a petitioner "bears a very heavy burden" when challenging a state criminal conviction. Einaugler v. Supreme Court of State of N.Y., 109 F.3d 836, 840 (2d Cir. 1997); Diaz v. Greiner, 110 F. Supp. 2d 225, 233 (S.D.N.Y. 2000). A habeas court may not grant relief on such a claim unless the record is "so totally devoid of evidentiary support that a due process issue is raised." Bossett, 41 F.3d at 830. Where a petitioner claims that his guilt was not proven beyond a reasonable doubt, the relevant question for the court is whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 319 (1979). The Court will "view the evidence in the light most favorable to the government," "construe all permissible inferences in its favor," and "resolve all issues of credibility in favor of the jury's verdict." United States v. Reyes, 157 F.3d 949, 955 (2d Cir. 1998) (internal citations and quotation marks omitted); see also Jackson, 443 U.S. at 319; Maldonado v. Scully, 86 F.3d 32, 35 (2d Cir. 1996).

When evaluating a sufficiency of the evidence claim, a federal court must look to state law to define the elements of the crime. <u>Jackson</u>, 443 U.S. at 324; <u>Quartararo v. Hamslmaier</u>, 186 F.3d 91, 97 (2d Cir. 1997). N.Y. Penal Law § 125.25 [2] provides that:

> A person is guilty of murder in the second degree when: ... Under circumstances evincing a depraved indifference to human life, he recklessly engages in conduct which creates a grave risk of death to another person, and thereby causes the death of another person.

<u>Id.</u> The term "recklessly" is defined, in pertinent part, as follows:

> A person acts recklessly with respect to a result or to a circumstance described by a statute defining an offense when he is aware of and consciously disregards a substantial and unjustifiable risk that such result will occur or that such circumstance exists. The risk must be of such nature and degree that disregard thereof constitutes a gross deviation from the standard of conduct that a reasonable person would observe in the situation....

N.Y. Penal Law § 15.05[3].

How these provisions are interpreted under state law depends on when a conviction is final. As the New York Court of Appeals elucidated last year in <u>Policano v. Herbert</u>, 7 N.Y.3d 588, 825 N.Y.S.2d 678 (2006), the jurisprudence concerning depraved indifference murder evolved "incrementally . . . in a different direction" from the law articulated by that court in <u>People v. Register</u>, 60 N.Y.2d 270, 469 N.Y.S.2d 599 (1983), and ultimately culminated in the "explicit overruling of <u>Register</u>" in <u>People v. Feingold</u>, 7 N.Y.3d 288, 292, 819 N.Y.S.2d 691 (2006). <u>Policano</u>,

7 N.Y.3d at 595. In <u>Register</u>, the court "held that recklessness, pure and simple, is the <u>mens</u> <u>rea</u> for depraved indifference murder." <u>Id.</u> at 597 (quoting <u>Register</u>, 60 N.Y.2d at 277). The law of New York later "gradually and perceptibly changed from an objectively determined degree-of-risk standard (the <u>Register</u> formulation) to a mens rea" approach where "depraved indifference to human life" became an element of "a culpable mental state" with decisions beginning in 2003. <u>Id.</u> at 600 (citing <u>People v. Suarez</u>, 6 N.Y.3d 202, 811 N.Y.S.2d 667 (2005)); <u>People v. Gonzalez</u>, 1 N.Y.3d 464, 775 N.Y.S.2d 224 (2004); <u>People v. Payne</u>, 3 N.Y.3d 266, 786 N.Y.S.2d 116 (2004) <u>People v. Hafaez</u>, 100 N.Y.2d 253, 762 N.Y.S.2d 572 (2003)). However, the Court of Appeals declined to apply this body of developing case law retroactively and expressly held that "<u>Register</u> states the correct interpretation of the law of New York with respect to the elements of depraved indifference murder on the date [Policano's] conviction became final in 2001." <u>Policano</u>, 7 N.Y.3d at 603.

Since petitioner's conviction became final in 1999 with the denial by the New York Court of Appeals of petitioner's application for leave to appeal, we look to New York law as articulated in <u>Register</u> in determining the sufficiency of the evidence. Accordingly, the elements of depraved indifference murder required to be proven were that defendant: (1) recklessly engaged in conduct; (2) which created a grave risk of death to another person; (3) thereby causing the death of another person;

(4) under circumstances evincing a depraved indifference to human life. See Policano, 7 N.Y.3d at 602 (discussing Register). "The mens rea of depraved indifference murder was recklessness and . . . 'under circumstances evincing a depraved indifference to human life' defined the factual setting, viewed objectively, in which the risk-creating conduct occurred." Id. Those requirements are satisfied if "a defendant's action created an almost certain risk of death, by for example, shooting the victim in the head multiple times at close range." Id. at 600. In fact, conduct that involves "such a high risk of death that it could also lead to the conclusion that it was intentional supports rather than detracts from characterizing it as evincing depraved indifference to human life . . . [P]urposeful homicide itself is the ultimate manifestation of indifference to the value of human life." Policano, 7 N.Y.3d at 599 (quoting People v. Sanchez, 98 N.Y.2d 373, 384, 748 N.Y.S.2d 312 (2002)). "That a defendant's acts virtually guaranteed the victim's death did not, in and of itself, preclude a guilty verdict on a theory of depraved indifference. . . . To the contrary . . . under the Register formulation the very facts establishing a risk of death approaching certainty and thus presenting compelling circumstantial evidence of intent - for example, a point-blank shooting of the victim in the head - likewise demonstrated depraved indifference." Policano, 7 N.Y.3d at 601.

Petitioner argues that the evidence adduced at trial could

support only a charge of intentional murder and that no reasonable view of the evidence supported a charge of depraved indifference murder. Petition at 9, 10-11, "Post Conviction Motion 440, Ground Two(B)" and "Ground Five(E)." Petitioner relies on Gonzalez, 1 N.Y.3d at 467, for the proposition that, "where . . . a defendant's conduct is specifically designed to cause the death of the victim, it simply cannot be said that the defendant is indifferent to the consequences of his or her conduct." Supp. Mem. at 14. However, as noted above, Register, and not Gonzalez, Payne and Suarez, state the correct interpretation of New York law with respect to the elements of depraved indifference murder at the time petitioner's conviction became final. See Policano, 7 N.Y.3d at 600-04.

Applying the law under Register, petitioner's contention that "the number and placement of shots fired here - at least four shots fired at Howard from close range to his head, neck and torso - does not suggest a reckless indifference about the outcome" is misplaced. See Supp. Mem. at 17. On the contrary, shooting at Howard at close range created such a high risk of death that it meets the level of manifested depravity required to establish depraved indifference murder. See Policano, 7 N.Y.3d at 598-601; Sanchez, 98 N.Y.2d at 378, 384; Register, 60 N.Y.2d at 277. The testimony was undisputed that "Antoine" started the fight in the park, not petitioner, and that petitioner drew a gun only after Joseph started to "make a move on" petitioner.

Viewing the evidence in the light most favorable to the verdict, the jury may have determined that petitioner spontaneously shot Howard rather than acted with premeditation or with an intention to use the gun when he went to the park. While the jury apparently rejected petitioner's testimony that "Antoine" grabbed the gun and killed Howard, it may have believed petitioner's testimony that he did not go to the park to hurt anyone and that he fired the first shot into the ground. Tr. at 538-39. The jury could have also inferred that petitioner fired the gun to disable or frighten Howard, rather than to kill him. In fact, given the testimony that Joseph was "right next to [Howard]" and Lucas was three feet in back of Howard when petitioner fired the gun, the jury may have believed that petitioner was firing indiscriminately rather than with the intent to kill Howard.

Petitioner also points to the prosecutor's argument in summation that petitioner "intentionally murdered" Howard. Tr. at 662. The jury, however, was not bound by the prosecutor's remarks in summation, as the trial judge clearly instructed: "it's your own recollection and understanding, your own evaluation who you saw, what you heard in this courtroom that will control your deliberations that is regardless of what counsel for either of the parties to this lawsuit have said in referring to the facts." Tr. at 694. Indeed, in finding petitioner's conduct reckless, the jury disregarded the prosecutor's argument that the killing was intentional.

Based on the record, the evidence was sufficient to permit a rational juror to find petitioner guilty beyond a reasonable doubt of depraved indifference murder.

IX.  Unconstitutional Vagueness

Petitioner claims that the distinction between depraved indifference murder and reckless manslaughter, both of which were submitted to the jury, is unconstitutionally vague.  First Amended Petition at 5, "Ground H."  Petitioner raised this claim in his third section 440 motion which was denied on procedural grounds and on the merits.  See New York Supreme Court Memorandum Decision dated March 14, 2003 (Resp. Exh. R).

Respondent argues that petitioner's claim is procedurally barred because it was denied by the state court for failure to raise the claim on direct appeal, an adequate and independent state ground.  Here, the state court "clearly and expressly" relied on a state procedural rule, N.Y. Crim. Proc. Law § 440.10(2)(c), independent of the merits of petitioner's claim. N.Y. Crim. Proc. Law § 440.10(2)(c), which limits collateral review of claims that were addressed or should have been addressed on direct appeal, is among the state procedural rules that have been found to provide an adequate and independent basis for barring habeas relief.  See Levine, 44 F.3d at 126; Desrosiers v. Phillips, No. CV-05-2941, 2006 WL 2092481, at *9 (E.D.N.Y. July 27, 2006).  As previously discussed, that the state court denied the claim on the merits in addition to relying

on a state procedural rule does not remove the bar to habeas relief.  See Harris, 489 U.S. at 264 n.10; Glenn, 98 F.3d at 724-25; Velasquez, 898 F.2d at 9.

Petitioner is unable to show cause and prejudice or a fundamental miscarriage of justice to avoid the procedural bar. The factual and legal bases for this claim were available at the time of petitioner's direct appeal and petitioner does not allege interference by state officials.[9]  Moreover, as discussed immediately below, petitioner's challenge to appellate counsel's effectiveness for failure to raise this claim on appeal is meritless and does not provide cause for his procedural default. See infra at 55-66, 92-93.  Although this Court need not reach the question of whether petitioner can show prejudice, I again briefly address the merits in light of his claim of ineffective assistance of appellate counsel.

Under the vagueness doctrine, "the touchstone is whether the statute, either standing alone or as construed, made it reasonably clear at the relevant time that the defendant's conduct was criminal." United States v. Lanier, 520 U.S. 259, 267 (1997); United States v. Velastequi, 199 F.3d 590, 593 (2d Cir. 1999); see Rogers v. Tennessee, 532 U.S. 451, 459 (2001)

---

[9] Arguably, the claim may not have been available to appellate counsel because trial counsel did not expressly move for dismissal of the depraved indifference murder count on this ground, although counsel did move for dismissal at the end of the prosecution's case.  In any event, as discussed, the underlying claim is meritless.

(right to fair warning "bear[s] on the constitutionality of attaching criminal penalties to what previously had been innocent conduct"); Marks v. United States, 430 U.S. 188, 191 (1977) ("persons have a right to fair warning of that conduct which will give rise to criminal penalties"); United States v. Nat'l Dairy Prods. Corp., 372 U.S. 29, 33 (1963) (if statute gave "sufficient warning that selling below cost for the purpose of destroying competition is unlawful, the statute is constitutional as applied to them"). Due process requires that a criminal statute "define the criminal offense with sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement." Kolender v. Lawson, 461 U.S. 352, 357 (1983); United States v. Whittaker, 999 F.2d 38, 42 (2d Cir. 1993). Where a statute does not regulate First Amendment interests, "the statute is judged on an as-applied basis." Maynard v. Cartwright, 486 U.S. 356, 361 (1988); Whittaker, 999 F.2d at 42. Courts use a two part test to determine whether a statute is unconstitutionally vague as applied: "a court must first determine whether the statute gives the person of ordinary intelligence a reasonable opportunity to know what is prohibited and then consider whether the law provides explicit standards for those who apply it." United States v. Nadi, 996 F.2d 548, 550 (2d Cir. 1993). "Because the statute is judged on an as applied basis, one whose conduct is clearly proscribed by the statute

cannot successfully challenge it for vagueness." _Id._

For example, in <u>Chapman v. United States</u>, 500 U.S. 453
(1991), the defendant challenged on vagueness grounds a statute
providing for a mandatory minimum for the distribution of a
certain amount of LSD.  There, the Court rejected the vagueness
challenge "since whatever debate there is [about the
interpretation of the statutory language] would center around the
appropriate sentence and not the criminality of the conduct."
500 U.S. at 467-68; <u>see</u> <u>also</u> <u>United States v. Trout</u>, 68 F.3d
1276, 1279-80 (11th Cir. 1995) ("Although Trout may not have
known under which provision he would be sentenced if convicted .
. . he clearly knew that such conduct was illegal and punishable
by at least five years of imprisonment); <u>United States v.
Masters</u>, 924 F.2d 1362, 1367 (7th Cir. 1991) ("defendants are on
adequate notice that they are committing crimes, and the fact
that they may not be aware of the extent of their criminality and
consequent exposure to punishment is a detail").

The depraved indifference murder statute provides that a
person is guilty when "[u]nder circumstances evincing a depraved
indifference to human life, he recklessly engages in conduct
which creates a grave risk of death to another person, and
thereby causes the death of another person."  N.Y. Penal Law
§ 125.25[2].  In contrast, a person is guilty of reckless
manslaughter when he "recklessly causes the death of another
person."  N.Y. Penal Law § 125.15[1].  Recklessness occurs when a

person "is aware of and consciously disregards a substantial and unjustifiable risk" and the risk "constitutes a gross deviation from the standard of conduct that a reasonable person would observe in the situation." N.Y. Penal Law § 15.03[3].

In _People v. Register_, the New York Court of Appeals explained that because "recklessness is the element of mental culpability required" in the depraved indifference murder statute, "the focus of the offense is not upon the subjective intent of the defendant, as it is with intentional murder, but rather upon an objective assessment of the degree of risk presented by defendant's reckless conduct." 60 N.Y.2d at 277; see also _People v. Roe_, 74 N.Y.2d 20, 24-25, 544 N.Y.S.2d 297 (1989) (evidence relating to "the actor's subjective mental state . . . is not pertinent to a determination of . . . whether the objective circumstances bearing on the nature of a defendant's reckless conduct are such that the conduct creates a very substantial risk of death"). The phrase "under circumstances evincing a depraved indifference to human life" refers not to the mens rea but to "the factual setting in which the risk creating conduct must occur." _Register_, 60 N.Y.2d at 276. This distinguishes reckless manslaughter in addition to the statutory language that provides that "in a depraved mind murder the actor's conduct must present a grave risk of death whereas in manslaughter it presents the lesser substantial risk of death." _Id._ "Whether the prosecution has demonstrated that the objective

circumstances elevated the degree of risk to the extent required for a murder conviction "is a qualitative judgment to be made by the trier of the facts." Roe, 74 N.Y.2d at 25. The requirement of "imminently dangerous conduct" that creates a "grave risk of death," Roe, 74 N.Y.2d at 24, was the primary means by which the legislature distinguished murder from manslaughter. See Register, 60 N.Y.2d at 279.

Several courts have upheld the constitutionality of New York's depraved indifference statute in rejecting claims of vagueness. See Guzman v. Greene, 425 F. Supp. 2d 298, 320 (E.D.N.Y. 2006); Salcedo v. Phillips, No. 04 Civ. 7964, 2005 WL 2211318, at *27-*31 (S.D.N.Y. Sept. 13, 2005); Mannix v. Philips, 390 F. Supp. 2d 280, 292 (S.D.N.Y. 2005); People v. Johnson, 87 N.Y.S.2d 357, 639 N.Y.S.2d 776 (1996); People v. Cole, 85 N.Y.2d 990, 629 N.Y.S.2d 166 (1995); People v. Poplis, 30 N.Y.2d 85, 88, 330 N.Y.S.2d 365 (1972); People v. Brown, 23 A.D.3d 1090, 804 N.Y.S.2d 209 (4th Dep't 2005); People v. Joyner, 303 A.D.2d 421, 755 N.Y.S.2d 866 (2d Dep't 2003). Some of these courts have found that the depraved indifference murder statute gave the accused fair warning that his conduct was "criminal" and "proscribed" since ordinary people would understand that shooting at someone at short range in the vicinity of others would be criminal and put them at risk of a homicide conviction. See Mannix, 390 F. Supp. 2d at 291-92; Salcedo, 2005 WL 2211318, at *28 & n.8; Boyce v. Commissioner, 217 F. Supp. 2d 108, 117 (D.

Me. 2002) (denying claim challenging Maine's depraved
indifference murder statute as unconstitutionally vague).
Moreover, New York case law at the time the crime was committed[10]
had applied the depraved indifference murder statute to conduct
similar to that which petitioner was accused.  See, e.g., People
v. Fenner, 61 N.Y.2d 971, 475 N.Y.S.2d 276 (1984) (evidence
sufficient for depraved indifference murder where defendant shot
at two of the four people with whom he had been fighting while
they attempted to run  away from defendant); Register, 60 N.Y.2d
270 (sufficient evidence for depraved indifference murder where
defendant brought loaded gun to bar and shot victim and a
bystander in a crowded barroom after an argument); People v.
Rosario, 208 A.D.2d 961, 617 N.Y.S.2d 887 (2d Dep't 1994)
(evidence sufficient for depraved indifference murder where
defendant testified that gun fired accidentally while prosecution
witnesses testified that defendant pulled gun during argument
with victim and fired a second shot at victim after first shot
missed); People v. Lopez, 197 A.D.2d 594, 602 N.Y.S.2d 872 (2d
Dep't 1993) (evidence that defendant shot victim after a fight
and attempt by victim's friend to appease defendant established
depraved indifference to human life).

Further, the Supreme Court "has recognized that a scienter
requirement may mitigate a law's vagueness, especially with

---

[10] More recent decisions would be irrelevant to whether
petitioner had "fair warning" that his conduct was proscribed by
the statute.  See Salcedo, 2005 WL 2211318, at *30.

respect to the adequacy of notice . . . that the conduct is
proscribed." <u>Posters 'N' Things, Ltd. v. United States</u>, 511 U.S.
513, 526 (1994); <u>Village of Hoffman Estates v. Flipside, Hoffman
Estates, Inc.</u>, 455 U.S. 489, 499 (1982); <u>see</u> <u>Advance Pharm. Inc.
v. United States</u>, 391 F.3d 377, 398 (2d Cir. 2004).  In
<u>Einaugler</u>, the Second Circuit upheld New York's reckless
endangerment statute against a vagueness challenge, in part,
because of the reckless[ness] scienter requirement.  109 F.3d at
842.  As the Court noted, the requirement "that the endangerment
be reckless and that the neglect be knowing" mitigated any
vagueness in the law "especially with respect to the adequacy of
notice to the complainant that his conduct is proscribed."  <u>Id.</u>
(citing <u>Hoffman Estates</u>, 444 U.S. at 499).  Similarly, the
depraved indifference statute requires that the conduct be
reckless such that the accused "is aware of and consciously
disregards a substantial and unjustifiable risk" in "creating a
grave risk of death."

Even the one federal judge in this Circuit who has found the
depraved indifference murder statute unconstitutionally vague
conceded that "the concept of depraved indifference to human life
is well understood, and is essentially self-defining
notwithstanding the confusing glosses placed on the statute by
<u>Register</u> and its progeny."[11]  <u>Jones v. Keane</u>, No. 02 Civ. 1804,

---

[11] Judge Brieant twice granted habeas relief on the same
grounds as those advanced by petitioner, but the Second Circuit
(continued...)

2002 U.S. Dist. LEXIS 27418, at *12 (S.D.N.Y. May 22, 2002),

rev'd on other grounds, 329 F.3d 290, 295-96 (2d Cir. 2003); see

also St. Helen v. Senkowski, No. 02 Civ. 10248, 2003 U.S. Dist.

LEXIS 26642, at *10 (S.D.N.Y. Sept. 19, 2003) ("The words

'depraved indifference to human life' do possess a clear meaning

in the general speech of the people.  Standing alone they may

well be sufficient to give adequate warning to a non-lawyer

member of the public as to what conduct is rendered unlawful by

the statute"), rev'd on other grounds, 374 F.3d 181 (2d Cir.

2004) (per curiam).

     In sum, based on the statutory language and case law that

existed at the time the crime was committed, petitioner was on

notice that his conduct was proscribed by the depraved

indifference murder statute.

     The second prong of the vagueness analysis concerns whether

the statute provides sufficient guidelines to the police,

prosecutors, judges and juries to prevent arbitrary and

discriminatory enforcement.  Kolender, 461 U.S. at 357.  "[S]ome

ambiguity in a statute's meaning is constitutionally tolerable."

United States v. Chestaro, 197 F.3d 600, 605 (2d Cir. 1999).

Here, the language of the statute does not allow for unlimited

discretion in its application.  Surely "recklessness" and

---

[11] (...continued)
reversed both decisions because the vagueness challenges had not
been exhausted and were procedurally barred.  See St. Helen, 2003
U.S. Dist. LEXIS 26642, at *10; Jones, 2002 U.S. Dist. LEXIS
27418, at *12.

"conduct which creates a grave risk of death" provide sufficient standards. See Register, 60 N.Y.2d at 274 ("defendant's conduct was imminently dangerous and presented a very high risk of death to others"). Although the language "circumstances evincing a depraved indifference to human life" may be a relatively broad concept, the Register court limited its scope to "an objective assessment of the degree of risk presented by defendant's reckless conduct."[12] Register, 60 N.Y.2d at 277; see Roe, 74 N.Y.2d at 25. Objective criteria in a statute "minimize[s] the possibility of arbitrary enforcement." See Poster 'N' Things, 511 U.S. at 526.

In any event, "most statutes must deal with the untold and unforeseen variations on factual situations and the practical necessities of discharging the business of government inevitably limit the specificity with which legislatures can spell out prohibitions." Boyce Motor Lines, Inc. v. United States, 342

---

[12] As previously discussed, the New York Court of Appeals later developed a "new interpretation of 'under circumstances evincing a depraved indifference to human life'" for the purpose of "dispel[ling] the confusion between intentional and depraved indifference murder, and thus cut[ting] off the continuing improper expansion of depraved indifference murder." Policano, 7 N.Y.3d at 603. Although narrowing of the scope of depraved indifference murder vis à vis intentional murder in cases after Register, the Court of Appeals in Policano recognized that "under the Register formulation the very facts establishing a risk of death approaching certainty ... --for example, a point-blank shooting of the victim in the head-- likewise demonstrated depraved indifference." Id. at 601. Thus, at the time of petitioner's conviction, the language of the depraved indifference statute, whether examined in relation to intentional murder or reckless manslaughter, was sufficient to inform the public that the shooting of Howard would violate the statute.

U.S. 337, 340 (1952). "Effective law enforcement often requires the exercise of some degree . . . of prosecutorial judgment but this alone does not render a statute unconstitutional." Nadi, 996 F.2d at 552. This is not a case where a criminal law permits the police, prosecutors and juries to conduct "a standardless sweep . . . to pursue their personal predilections." Kolender, 461 U.S. at 358. The discretion granted to the police and jurors here is no greater than in other criminal statutes that have been upheld despite vagueness challenges. See, e.g., United States v. X-Citement Video, Inc., 513 U.S. 64, 78-79 (1994) ("lascivious"); United States v. Rybicki, 354 F.3d 124, 142-43 (2d Cir. 2003) ("scheme or artifice to deprive another of the intangible right to honest services"); Einaugler, 109 F.3d at 840 ("recklessly engaged in conduct that created a substantial risk of serious physical injury").

Indeed, the jury instructions administered in this case gave the jury sufficient guidelines to prevent arbitrary or discriminatory application of the statute. The trial judge clearly distinguished the depraved indifference murder charge from the reckless manslaughter charge by emphasizing a finding of circumstances evincing a depraved indifference to human life. Tr. at 732, 737, 769, 775. In addition to providing the statutory definition of recklessness, the trial judge instructed that "conduct evincing a depraved indifference to human life is much more serious and blameworthy than conduct that's merely

reckless, you have got to [sic] determine whether the circumstances surrounding the firing of the gun at Avery Howard were so wanton, so brutal, so callous, so deficient in a moral sense, so extremely dangerous and inhuman as to demonstrate an attitude of utter disregard for the life of the endangered person." Tr. at 732. Thus, unlike the charge of reckless manslaughter, to convict for depraved indifference murder, the jury was required to find that petitioner's conduct was "extremely dangerous" and created a "grave risk of death." The trial judge's construction was unambiguous and limited the jury's discretion. This is not a case where a statute permitted a jury "to pursue their personal predilections." Kolender, 461 U.S. at 358.

The trial court also specifically instructed the jury to consider the depraved indifference charge first and if those elements were proven, "not [to] deliberate" on the reckless manslaughter charge. Tr. at 734-35. The Court thus limited the jury as to which charge to consider. See Mannix, 390 F. Supp. 2d at 293. Moreover, petitioner does not have a constitutional right to have the jury instructions administered in the order he prefers. See Boyce, 217 F. Supp. 2d at 118; Gillette v. Greiner, 76 F. Supp. 2d 363, 371 (S.D.N.Y. 1999); see also Johnson, 87 N.Y.2d at 360 (upholding discretion of trial judge to set order of instructions given).

Further, a jury is presumed to follow its instructions and

to understand a judge's answer to its question.  See Weeks v.
Angelone, 528 U.S. 225, 234 (2000).  Here, the jury requested
that the judge repeat the elements of intentional murder and
depraved indifference murder, Tr. at 768, but made no other
requests for clarification of the instructions given regarding
the death of Arvi Howard.  This underscores the fact that the
jury understood the distinction between depraved indifference
murder and reckless manslaughter.  See Sanghvi v. City of
Claremont, 328 F.3d 532, 542 (9th Cir. 2003) (jury's request for
clarification did not reflect confusion with the court's
instructions); Barnes v. Reynolds, No. 90 CIV. 0065, 1990 WL
91755, at *3 (S.D.N.Y. June 21, 1990); see also Allah v. Kelly,
32 F. Supp. 2d 592, 598 (W.D.N.Y. 1998) (even if jury's request
for several re-readings of accomplice liability standard
indicated some confusion, there was no prejudice because judge
provided accurate statement of the law).

     Even if petitioner were correct that there is no discernible
distinction between depraved indifference murder and the lesser
included offense of reckless manslaughter, there is no
constitutional violation entitling him to habeas relief.  See
Mannix, 390 F. Supp. 2d at 292-93; Salcedo, 2005 WL 2211318, at
*31 n.9; see also Boyce, 217 F. Supp. 2d at 117-19 (discussing
distinction between Maine's depraved indifference murder statute
and manslaughter); Donaldson, 755 N.Y.S.2d at 566.  In reversing
the Seventh Circuit decision vacating the sentence of a defendant

who was convicted under a federal gun possession statute because another statute had identical elements but provided for a lesser sentence, the Supreme Court held in <u>United States v. Batchelder</u>, 442 U.S. 114 (1979) that "due process requirements were satisfied since each statute provided adequate notice. <u>Id.</u> at 123. Even where two separate statutes cover identical conduct, there is no constitutional impediment to the prosecution exercising its discretion to choose which statute to charge and prosecute absent selective enforcement. <u>See</u> <u>id.</u> at 123-25; <u>see also</u> <u>Mannix</u>, 390 F. Supp. 2d at 292-93; <u>Salcedo</u>, 2005 WL 2211318, at *31 n.9; <u>Pike v. Santucci</u>, No. CV-86-3832, 1987 WL 6397, at *2-*3 (E.D.N.Y. Jan. 29, 1987) (denying on habeas review a challenge to New York's coercion statute which required proof of same elements for coercion in the first degree as coercion in the second degree but provided for different sentences); <u>Donaldson</u>, 755 N.Y.S.2d at 566. Here, there is no claim of discrimination based on race or another suspect classification.

In conclusion, plaintiff's vagueness claim is without merit.

X. <u>Ineffective Assistance of Trial Counsel</u>

Petitioner makes a number of claims that his trial counsel's representation was ineffective. As respondent correctly argues, petitioner is procedurally barred from raising nearly all of the issues which he belatedly raised in either his first or third section 440 motion. Where there is more than one basis for finding procedural default, only one bar will be discussed. This

Court need not, on habeas review, consider the merits of petitioner's claims in light of his utter failure and inability to demonstrate cause and prejudice or a fundamanetal miscarriage of justice. However, in light of petitioner's claims of ineffective assistance of appellate counsel, this Court will discuss the merits of the claims raised, if not discussed elsewhere in this report and recommendation.

In order to prevail on a claim of ineffective assistance of trial counsel, a petitioner must demonstrate that his attorney's representation (1) "fell below an objective standard of reasonableness," and (2) that "there is a reasonable probability that but for counsel's unprofessional errors, the result of the proceedings would have been different." Strickland v. Washington, 466 U.S. 668, 688, 694 (1984); Mayo v. Henderson, 13 F.3d 528, 533 (2d Cir. 1994); Claudio v. Scully, 982 F.2d 798, 803 (2d Cir. 1992); Abdurrahman v. Henderson, 897 F.2d 71, 74 (2d Cir. 1990). A court reviewing an attorney's performance must be "highly deferential" and must make "every effort [] to eliminate the distorting effects of hindsight," evaluating "the conduct from counsel's perspective at the time." Strickland, 466 U.S. at 689; see also Loliscio v. Goord, 263 F.3d 178, 192 (2d Cir. 2001). Thus, a reviewing "court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Strickland, 466 U.S. at 689; DeLuca v. Lord, 77 F.3d 578, 584 (2d Cir. 1996).

From reviewing the record, this Court finds that counsel effectively represented petitioner in all respects. Counsel presented a defense based on the theory that petitioner's companion, Antoine, took the gun from petitioner and shot the victim, as petitioner claimed in post-arrest statements to the police. Counsel extensively cross-examined the prosecution's eyewitnesses regarding their perception, veracity and bias. In summation, defense counsel argued that the eyewitness testimony was unreliable, emphasizing that the eyewitnesses fled after petitioner fired the first shot into the ground and, therefore, did not see petitioner actually shoot anyone. He also argued that the police did not conduct a thorough investigation, failing to locate independent eyewitnesses. Further, counsel successfully obtained both an acquittal on the intentional murder charge and dismissal of the reckless endangerment conviction.

A.   <u>Failure to Confer Adequately with Petitioner</u>

Petitioner alleges that trial counsel failed to consult with him regarding trial strategy and prepare him to testify. <u>See</u> Petition at 8-9, "Post Conviction Motion 440, Ground one." This claim is procedurally barred because petitioner did not raise the claim until his third section 440 motion. In denying petitioner's motion pursuant to N.Y. Crim Proc. Law § 440.10(3)(c), the court stated that "defendant could have raised the issue during either of his previous post-judgment motions but failed to do so." New York Supreme Court Memorandum

Decision dated March 14, 2003 at 4 (Resp. Exh. R).  Federal

courts in this circuit have found that section 440.10(3)(c) is an

adequate and independent procedural bar to preclude federal

habeas review.  See Robinson v. Senkowski, No. CV-99-0256, 2006

WL 1154788, at *6 (E.D.N.Y. Apr. 28, 2006); Rosario v. Bennett,

No. 01 Civ. 7142, 2002 WL 31852827, at *22 (S.D.N.Y. Dec. 20,

2002); see also McKethan v. Mantello, 292 F.3d 119, 123 (2d Cir.

2002).

    In addition, this claim is meritless.  Given the strong

presumption in favor of counsel providing reasonable professional

assistance, petitioner's vague and conclusory allegations are

insufficient.  Although petitioner claims counsel "never visited

to discuss trial or . . . strategy or discuss available defenses"

he does not suggest how more extensive discussions with his

attorney would have changed his testimony or his defense.  See

Strickland, 466 U.S. at 694; United States v. Wilson, 216 F.3d

1074, 2000 WL 778021, at *3 (2d Cir. June 15, 2000); Jones v.

Conway, 442 F. Supp. 2d 113, 125 (S.D.N.Y. 2006); Reffsin v.

United States, 333 F. Supp. 2d 105, 107 (E.D.N.Y. 2004); Lamberti

v. United States, 95 Civ. 1557, 1998 WL 118172, at *2 (S.D.N.Y.

Nov. 17, 2004).  Indeed, petitioner's defense, and hence,

counsel's options, were constrained by the oral and videotaped

statements petitioner made to the police.  See Lou v. Mantello,

No. 98-CV-5542, 2001 WL 1152817, at *10 (E.D.N.Y. Sept. 25, 2001)

(further consultation with counsel would not have altered the

defense since petitioner was bound by story he told police in oral, written and videotaped statements).

Moreover, "courts have held that the 'brevity of consultation time between a defendant and his counsel alone cannot support a claim of ineffective assistance of counsel.'" See Raposo v. United States, No. 01 Civ. 5870, 2004 WL 1043075, at *3 (S.D.N.Y. May 7, 2004) (quoting Murray v. Maggio, 736 F.2d 279, 282 (5th Cir. 1984); Chavez v. Pulley, 623 F. Supp. 672, 685 (C.D. Cal. 1985)). There is no required minimum number of meetings between counsel and client. See United States ex rel. Kleba v. McGinnis, 796 F.2d 947, 954 (7th Cir. 1986); Jones, 442 F. Supp. 2d at 126; Byas v. Keane, No. 97 Civ. 2787, 1999 WL 608787, at *5 (S.D.N.Y. Aug. 12, 1999); see also Strickland, 466 U.S. at 669 (declining to establish mechanical rules for counsel to follow).

Trial counsel's activity log, which petitioner points to for support of his claim that counsel spent insufficient time conferring with him, is not compelling. Counsel explained that those entries are not broken down into descriptions of each task completed during that block of time, such as meeting with his client prior to court proceedings. See Supplemental Affirmation of Edward Friedman dated October 11, 2002 at ¶ 3 ("Friedman Aff.") (Resp. Exh. J). In fact, defense counsel affirmed that he had extensive conversations with petitioner before his arraignment and discussed the case and trial strategy with him

each time there was a pre-trial conference and on every trial day.  See id. at ¶ 4.  Those discussions were particularly extensive shortly before trial, during jury selection and during the prosecution's case.  Id.  Specifically, after the testimony of each prosecution witness, counsel conferred with petitioner about possible cross-examination questions for that witness.  Id. at ¶ 5.  They also discussed the importance and impact of petitioner's pretrial videotaped statement to the district attorney's office.  Id. at ¶ 6.  Moreover, although counsel explained to petitioner that he was not required to testify at trial, petitioner made the decision to testify in his own defense early in the course of the trial.  Id. at ¶ 7.  In preparation for that testimony, they discussed the questions counsel would ask on direct examination, as well as the questions that petitioner could expect on cross-examination.  Id.

Given the overwhelming evidence of petitioner's guilt, it is unlikely that more communication with counsel would have changed the outcome of the trial.  See United States ex rel. Testamark v. Vincent, 496 F.2d 641, 643 (2d Cir. 1974); Rosario, 2002 WL 31852827, at *31; Byas, 1999 WL 608787, at *7.  Thus, besides failing to demonstrate that representation was ineffective because counsel insufficiently conferred with him, petitioner cannot show any actual prejudice or manifest injustice to overcome the procedural bar.

B.   <u>Failure to Interview and Call Witnesses</u>

Petitioner claims, as argued in his first and third section 440 motions, that counsel failed to interview potential witnesses and prosecution witnesses prior to trial and call certain witnesses to support his defense.  <u>See</u> Petition at 8-9, "Post Conviction Motion, Ground one;" First Amended Petition at 3-4, "Ground G."  As to petitioner's claim raised in his first section 440 motion that trial counsel failed to call Barry London and Mark Williams, the state court denied that claim pursuant to N.Y. Crim. Proc. Law § 440.10(1)(g) which permits a state court to vacate the judgment only if the defendant provides new evidence "which is of such character as to create a probability" of a more favorable verdict had the evidence been received at trial.  <u>See</u> New York Supreme Court Memorandum Decision dated June 6, 2000 at 6 (Resp. Exh. F).  The court noted "the absence of any indication from either [witness] that he possesses evidence which is of such character as to create a probability that" it would have changed the outcome of the trial.  <u>Id.</u>  In fact, neither witness saw the actual shooting.  As to the remainder of this claim, the state court ruling on petitioner's third section 440 motion denied the claim for petitioner's failure to raise the claim in earlier section 440 motions.

In any event, the claim is meritless.  Counsel's decision to interview or call witnesses is a strategic one entitled to a strong presumption of reasonableness.  <u>See</u> <u>United States v.</u>

_Aguirre_, 912 F.2d 555, 560 (2d Cir. 1990); _United States ex rel._ _Walker v. Henderson_, 492 F.2d 1311, 1314 (2d Cir. 1974); _Byas_, 1999 WL 608787, at *6; _United States v. Yu_, 902 F. Supp. 464, 468 (S.D.N.Y. 1995), _aff'd_, 101 F.3d 1393 (2d Cir. 1996); _United_ _States v. Matos_, 781 F. Supp. 273, 279 (S.D.N.Y. 1991). "[W]hether to call specific witnesses -- even ones that might offer exculpatory evidence -- is ordinarily not viewed as a lapse in professional representation." _United States v. Best_, 219 F.3d 192, 201 (2d Cir. 2000).

Petitioner vaguely claims that counsel failed to investigate or call at trial witnesses that would have been helpful to his defense. However, petitioner neither identifies the other witnesses besides London and Williams nor describes how interviewing the witnesses would have aided his defense. As discussed earlier, because London and Williams had no information material to the case, counsel's strategic decision not to call them as witnesses is entitled to a presumption of reasonableness. Absent any proffer that these or other witnesses would have provided exculpatory testimony, petitioner's claim is too vague and speculative to state a claim. _See_ _United States v. Vargas_, 920 F.2d 167, 170 (2d Cir. 1990) (petitioner's "conclusory" allegations failed to demonstrate that counsel's decision not to call witness was unreasonable).

Petitioner specifically claims that he gave counsel a letter from Sheryce Hodges in which she stated that she saw the "entire

event" from her apartment window overlooking the park.  See First

Amended Petition at 11-12, "Ground G."  However, petitioner's

trial counsel's credible affidavit refutes this claim.  Counsel

denies that he received any communication from someone who stated

that they witnessed the shooting from their apartment window or

anyone else who potentially supported petitioner's version of the

shooting.  Friedman Aff. at ¶ 9.  Further, counsel has no

recollection of the name Sheryce Hodges.  Id.  Notwithstanding

the dispute as to whether petitioner provided counsel with a

letter, an evidentiary hearing is not required because the

affidavits presented provide a sufficient basis to resolve

petitioner's charge.  See Chang v. United States, 250 F.3d 79, 86

(2d Cir. 2001).  Tellingly, petitioner made no mention of this

exculpatory witness in his submission on direct appeal or either

of his first two motions to vacate his conviction, both of which

included claims for ineffective assistance of trial counsel.[13]

Because the only support for petitioner's claim is his own

statement years after his conviction that such a witness existed,

the claim fails.  See Chang, 250 F.3d at 85-86 (affirming

---

[13] Petitioner claimed in his error coram nobis petition
ineffective assistance of appellate counsel for failure to argue
the ineffectiveness of trial counsel for not investigating this
witness.  In support of his third section 440 motion, petitioner
submitted a letter he sent to his counsel more than three years
after the trial inquiring as to the whereabouts of Ms. Hodges's
letter and counsel's response.  "Motion Pursuant to C.P.L. 440"
(Resp. Exh. P).  Although petitioner refers only to Ms. Hodges as
"the witness," counsel responded that "I do not have the letter
from Ms. Hodges in my possession."  See id.

dismissal of petition where counsel submitted credible affidavit); United States v. Wilson, 216 F.3d 1074, 2000 WL 778021 (Table), at *3 (2d Cir. 2000) (petitioner's self-serving affidavit and absence of affidavits from allegedly uncontacted witnesses did not establish ineffective assistance); Philippe v. United States, No. 04 CV 3804, 2007 WL 13414, at *3 (E.D.N.Y. Jan. 2, 2007) (ineffective assistance claim failed where petitioner's counsel's affidavit contradicted his claim).  In any event, petitioner fails to describe Ms. Hodges's potential testimony beyond the bald assertion that she would have testified to his innocence.  Even accepting petitioner's brief description of what Ms. Hodges witnessed, it is questionable that she could have accurately observed the events in the dimly lit park from such a distance at night.  Once again, petitioner's claim is far too vague to satisfy his heavy burden.  See Vargas, 920 F.2d at 170.

Petitioner's complaint that his counsel did not call Stanley Joseph, the witness at the line-up who asked Detective Schwartz to have petitioner smile to testify at the Wade hearing, is also without merit.  Mr. Joseph testified at trial that Detective Schwartz denied his request, Tr. at 186-87, and petitioner offers no explanation for why Mr. Joseph would have testified any differently at the Wade hearing.  As discussed earlier, supra at 35-42, petitioner's claim that his line-up was unduly suggestive is meritless.  Similarly, petitioner's complaint that counsel

failed to interview Detective Schwartz lacks merit.  Counsel had the opportunity to cross-examine Detective Schwartz at the <u>Wade</u> hearing and petitioner offers no reason why interviewing him would have resulted in a change in his testimony at trial.

Petitioner's claim that his counsel should have consulted a medical or ballistics expert suffers from the same vagueness as his other claims.  He does not describe how a medical or ballistics expert might have contradicted the prosecution's experts nor how such testimony would have changed the outcome of the trial.  Petitioner points out that the prosecution's medical expert testified that Mr. Howard was shot in the back, while eyewitnesses testified that Mr. Howard was shot in the chest.  In any event, trial counsel highlighted that discrepancy in his summation.  Tr. at 638-42.

In sum, these claims are meritless and therefore petitioner cannot show that he was prejudiced.

C.  <u>Failure to Object to Leroy Jones's Invocation of Fifth Amendment Privilege</u>

Petitioner contends that counsel was remiss in failing to object when a prosecution witness, Leroy Jones, invoked his Fifth Amendment rights on cross-examination.  <u>See</u> Petition at 9, "Post Conviction Motion 440, Ground one."  This claim is procedurally barred as it was denied by the first section 440 court for petitioner's failure to raise it on direct appeal.  <u>See</u> New York Supreme Court Memorandum Decision dated June 6, 2000 at 5-6 (Exh. F) (citing N.Y. Crim. Proc. Law § 440.10(2)(c)).  Accordingly,

this ineffective assistance of counsel claim is barred by an independent and adequate state ground. See Sweet v. Bennet, 353 F.3d 135, 140-41 (2d Cir. 2003). Besides failing to show cause and prejudice, petitioner has no meritorious claim.

The Confrontation Clause of the Sixth Amendment affords the accused the right "to be confronted with the witnesses against him." U.S. Const. amend. VI. Although the accused is guaranteed "an opportunity for effective cross-examination," "not every instance in which a witness invokes the privilege will give rise to a confrontation clause violation." Bagby v. Kuhlman, 932 F.2d 131, 135 (2d Cir. 1991). Rather, the Sixth Amendment is violated only where assertion of the witness's privilege "undermines the defendant's opportunity to test the truth of the witness' direct testimony." Id. In balancing the accused's rights under the confrontation clause against the witness's Fifth Amendment rights, courts must consider: "(1) whether the matter about which the witness refuses to testify is collateral to his or her direct testimony, and (2) whether the assertion of the privilege precludes inquiry into the details of his or her direct testimony." Id. The Confrontation Clause is violated only where "a witness asserts the privilege with respect to a non-collateral matter and the defendant is deprived of a meaningful opportunity to test the truth of the witness' direct testimony." Id. Collateral matters are those that bear solely on the witness's credibility, such as other unrelated crimes. See United States

v. Yip, 930 F.2d 142, 147 (2d Cir. 1990); Dunbar v. Harris, 612
F.2d 690, 692 (2d Cir. 1983).

Defense counsel cross-examined Jones regarding unrelated
crimes, including his failure to appear for a court date and his
violation of an order of protection.  Tr. at 609-15.  During
cross-examination, Jones twice refused to answer questions
relating to his violation of court orders.  Id. at 609, 615.
However, these were collateral matters that related solely to
Jones's credibility.  Moreover, Jones's invocation of the
privilege did not prevent defense counsel from extensively cross-
examining him concerning his direct testimony.  Thus, because
petitioner's Confrontation Clause rights were not violated by
Jones's invocation of his Fifth Amendment privilege, defense
counsel was not ineffective for failing to object.

    D.    Failure to Object to Providing Jury With Transcript
           Outside of the Courtroom

Petitioner argues that trial counsel was ineffective for
failing to object to the court's failure to return the jury to
the courtroom to review trial testimony and determine what
portion of the testimony had been stricken from the record.
Petition at 9, "Post Conviction Motion 440, Ground one."
Petitioner first raised this claim in his second section 440
motion which the court summarily denied "[f]or the reasons stated
in the People's answer filed on June 14, 2001."  See New York
Supreme Court Memorandum Decision dated June 19, 2001 (Resp. Exh.
K).  The prosecution had argued that the claim was procedurally

barred for petitioner's failure to raise the claim on direct appeal and his prior section 440 motion and was meritless.  <u>See</u> Affidavit in Support of Motion to Vacate at ¶¶ 6-7 (Resp. Exh. G.)

Although the state court did not expressly reject this claim on procedural or substantive grounds, the claim is easily rejected on the merits.  During deliberations, the jury sent the judge a note asking to "see the testimony of the two witnesses Stanley Joseph and Alan Lucas Howard."  Tr. at 764.  Contrary to petitioner's contention, the jury was not given the transcript to review which would have included those portions that had been stricken from the record.  Quite the opposite, the record is clear that the jury was brought into the courtroom and the trial testimony was read to it by the court reporter in the presence of petitioner and his counsel.  Tr. at 764-68.  In fact, the trial judge expressly told the jury that, "I cannot submit [the typewritten transcript] to you.  However, the court reporter is prepared to read the testimony of Stanley Joseph and Alan Lucas Howard aka Alan Lucas."  Tr. at 766.  Therefore, petitioner's claim lacks any factual basis.

E.    <u>Remaining Procedurally Barred Claims</u>

Last, petitioner argues that trial counsel was ineffective for failing to raise the following three issues: that the weapons posession count was a lesser included offense of attempted murder and second degree murder; that the line-up was unduly suggestive;

and that petitioner's right to counsel had attached when he became the "focus" of the police investigation into Howard's shooting. Petition at 9, "Post Conviction Motion 440, Ground one" and "Collateral Motion Writ of Error Coram Nobis, Ground(B)." Petitioner raised these claims in his first section 440 motion which the state court denied for petitioner's failure to raise the issues on direct appeal as required by N.Y. Crim. Proc. Law § 440.10(2)(c). <u>See</u> New York Supreme Court Memorandum Decision dated June 6, 2000 at 5-6 (Exh. F). For the reasons previously discussed, petitioner can neither show cause and prejudice to excuse his default nor that the underlying claims have merit. <u>See</u> <u>supra</u> at 23-25, 35-46. Therefore, counsel could not be found ineffective for failing to raise the issues.

XI. <u>Ineffective Assistance of Appellate Counsel</u>

Petitioner brings several claims relating to the ineffective assistance of appellate counsel. Petition at 12-16, "Collateral Motion Writ of Error Coram Nobis, "Ground One" and "Ground E;" Second Amended Pet. at 3-4; Supp. Mem. at 10-22. Like a claim for ineffective assistance of trial counsel, a defendant claiming ineffective assistance of appellate counsel must demonstrate that his attorney's representation "fell below an objective standard of reasonableness." <u>Strickland</u>, 466 U.S. at 688; <u>Mayo</u>, 13 F.3d at 533. In satisfying "the prejudice prong of <u>Strickland</u>, a petitioner claiming that appellate counsel was ineffective must show "a reasonable probability that the unraised claim would have

been successful before the state's highest court." <u>Marsh</u>, 2003 WL 145564, at *5; <u>Peterson</u>, 2002 WL 1592600, at *4; <u>see</u> <u>Claudio</u>, 982 F.2d at 803.

A habeas petitioner claiming ineffective assistance of appellate counsel based on a failure to raise certain issues must demonstrate that counsel "omitted significant and obvious issues while pursuing issues that were clearly and significantly weaker." <u>Mayo</u>, 13 F.3d at 533. In evaluating appellate counsel's performance, reviewing courts must also bear in mind that "experienced advocates since time beyond memory have emphasized the importance of winnowing out weaker arguments on appeal and focusing on one central issue if possible, or at most on a few key issues." <u>Jones v. Barnes</u>, 463 U.S. 745, 751-52 (1983); <u>see</u> <u>Warren v. Miller</u>, 78 F. Supp. 2d 120, 134 (E.D.N.Y. 2000) ("It is counsel's job to ensure that weak arguments are eliminated, so as not to conceal the force of stronger arguments.") Thus, "reviewing courts should not second-guess the reasonable decisions of appellate counsel to press certain issues instead of others." <u>Marsh v. Ricks</u>, No. 02 Civ. 3449, 2003 WL 145564, at *5 (S.D.N.Y. Jan. 17, 2003); <u>Peterson v. Bennett</u>, No. 01-CV-920, 2002 WL 1592600, at *4 (E.D.N.Y. July 18, 2002); <u>see</u> <u>Mayo</u>, 13 F.3d at 533. "[C]ounsel does not have a duty to advance every nonfrivolous argument that could be made." <u>Mayo</u>, 13 F.3d at 533.

Petitioner's appellate counsel filed a brief raising four

issues with the Appellate Division, Second Department.  With the
exception of one claim discussed below, appellate counsel's
detailed discussion of these issues demonstrates an able command
of the factual record and the appropriate use of legal authority.
It appears that any claims omitted from the brief were rejected
due to weakness and in order to highlight the strongest arguments
for review.  Particularly, as here, where there is little
likelihood that raising other issues would have altered the
result on appeal, counsel's choice of issues to raise was well
within the range of strategy that is left to the professional
judgment of counsel and does not fall "below an objective
standard of reasonableness." <u>Strickland</u>, 466 U.S. at 688.  For
the same reason, petitioner cannot satisfy the prejudice prong of
<u>Strickland</u>.

     A.   <u>Appellate Counsel's Conflict of Interest</u>

     In conjunction with his claims of ineffective assistance of
appellate counsel discussed below, petitioner claims that the
Appellate Division erred in denying his motion for reassignment
of counsel.  Petition at 13, "Collateral Motion Writ of Error
Coram Nobis, Ground One(A)."  Respondent does not directly
address this aspect of petitioner's ineffective assistance claim,
nor did the Appellate Divison expressly discuss its previous
denial of his motion for reassignment of counsel in its ruling on
his writ of <u>error</u> <u>coram</u> <u>nobis</u>.

     Although the Appellate Division did not expressly rule on

this claim in denying petitioner's ineffective assistance of appellate counsel claim, a petitioner is deemed to have exhausted his state judicial remedies where the issue has been fairly presented in the state courts or the petitioner has otherwise given the state courts a fair opportunity to address the federal claim.  See Duncan v. Henry, 513 U.S. 364, 366-67 (1995).  A claim is fairly presented if the state courts are informed of the legal and factual premises of the claim.  See Castille v. Peoples, 489 U.S. 346, 350-51 (1989); Jones v. Vacco, 126 F.3d 408, 413-14 (2d Cir. 1997) ("Citing a specific constitutional provision or relying on federal constitutional precedents alerts state courts of the nature of the claim").  Once a federal claim has been properly presented to the state courts, the fact that the state court did not actually rule on the claim but had a fair opportunity to do so, does not render the claim unexhausted.  See id.  Here, since petitioner raised this claim in his writ of error coram nobis and explained the facts on which the claim is based, it is deemed exhausted.

To prevail on a conflict of interest claim, petitioner must show that an "actual conflict of interest adversely affected his lawyer's performance."  Cuyler v. Sullivan, 446 U.S. 335, 349-50 (1980); United States v. Levy, 25 F.3d 146, 157 (2d Cir. 1994); see Smith v. Robbins, 528 U.S. 259, 285 (2000).  An actual conflict of interest exists when the attorney's and defendant's interests "diverge with respect to a material factual or legal

issue or to a course of action." <u>Cuyler</u>, 446 U.S. at 356 n.3.
In his <u>coram</u> <u>nobis</u> petition, petitioner argued that a conflict of
interest arose because appellate counsel failed to respond to his
letters and generally failed to consult with him.  Such a
complaint falls far short of a showing that any actual conflict
of interest existed.

Nor can petitioner show that the claimed conflict "adversely
affected" counsel's performance.  A defendant is required to
demonstrate that some "plausible alternative defense strategy or
tactic might have been pursued," and that the "alternative
defense was inherently in conflict with or not undertaken due to
the attorney's other loyalties or interests." <u>Levy</u>, 25 F.3d at
157.  "Plausible alternative defenses" refer to those which a
"zealous advocate" would "reasonably pursue" under the
circumstances.  <u>See</u> <u>Lopez v. Scully</u>, 58 F.3d 38, 41 (2d Cir.
1995).

Petitioner's claims that appellate counsel failed to
communicate with him do not constitute <u>per</u> <u>se</u> ineffective
assistance of counsel.  <u>See</u> <u>Campbell v. Greene</u>, 440 F. Supp. 2d
125, 152 (N.D.N.Y. 2006); <u>McIntyre v. Duncan</u>, No. 03-CV-0523,
2005 WL 3018698, at *3 (E.D.N.Y. Nov. 8, 2005); <u>Buitrago v.
Scully</u>, 705 F. Supp. 952, 955 (S.D.N.Y. 1989); <u>see</u> <u>also</u> <u>Morse v.
Montana</u>, 892 F.2d 83 (Table) (9th Cir. 1989); <u>McCrae v.
Blackburn</u>, 793 F.2d 684, 688 (5th Cir. 1986); <u>United States v.
Goudy</u>, 792 F.2d 664, 672 (7th Cir. 1986).  "Although it may be

desirable and productive, the Constitutional right to effective assistance of counsel does not encompass the requirement that an attorney consult with his client to discuss the alleged trial errors that his client wishes to pursue." Campbell, 440 F. Supp. 2d at 152; McIntyre, 2005 WL 3018698, at *3; Raposo v. United States, 2004 WL 1043075, at *3 (S.D.N.Y. May 7, 2004) ("brevity of consultation time between a defendant and his counsel alone cannot support a claim of ineffective assistance of counsel"). In any event, as discussed above, appellate counsel was effective in all respects. Moreover, the right to appellate counsel does not confer a defendant with the right to a "meaningful attorney-client relationship," complete satisfaction with counsel's performance nor guarantee that a defendant will be represented by the lawyer of his choice. Morris v. Slappy, 461 U.S. 1, 12-15 (1983); United States v. John Doe 1, 272 F.3d 116, 122 (2d Cir. 2000). The Second Circuit has "recognized that certain restraints must be put on the reassignment of counsel lest the right be 'manipulated so as to obstruct the orderly procedure in the courts or to interfere with the fair administration of justice." McKee v. Harris, 649 F.2d 927, 931 (2d Cir. 1981). A court may require a defendant to proceed with counsel not of defendant's choosing, so long as it does not compel defendant to proceed with incompetent counsel. See United States v. Schmidt, 105 F.3d 82, 89 (2d Cir. 1997); United States v. Locascio, 6 F.3d 924, 931 (2d Cir. 1993).

Therefore, petitioner's claim that his appellate counsel failed to consult with him or incorporate the arguments he suggested does not establish ineffective assistance of counsel. Further, plaintiff has not demonstrated any prejudice stemming from appellate counsel's failure to communicate with him. Thus, the Appellate Division's denial of petitioner's motion for substitution of counsel does not provide a basis for habeas relief.

B.    <u>Appellate Counsel Raised Meritless Issue</u>

Petitioner argues that appellate counsel was ineffective for raising the meritless claim that his sentence was improper because the court failed to sentence defendant for his reckless endangerment conviction. Petition at 12, "Collateral Motion Writ of Error Coram Nobis, Ground One(A)." The Appellate Division rejected that argument since the count had been dismissed. <u>See</u> <u>Farr</u>, 262 A.D.2d 655.

To prevail on this claim, petitioner must show that counsel's decision to raise the sentencing claim, to the exclusion of "clearly stronger" issues that should have been raised, fell below an objective standard of reasonableness, and that, had counsel argued the other issues, there is a reasonable probability that petitioner's appeal would have been granted. <u>See</u> <u>Mayo</u>, 13 F.3d at 533-34. Thus, even if counsel's decision to raise this claim fell outside the "wide range of professionally competent assistance," since none of the claims counsel declined

to raise were likely to succeed, petitioner was not prejudiced.

C.  Appellate Counsel Failed to Raise Ineffective Assistance of Trial Counsel

Petitioner argues that appellate counsel was ineffective for failing to raise the issues of ineffective assistance of trial counsel discussed above.  Petition at 13-14, "Collateral Motion Writ of Error Coram Nobis, Ground(B)."  Since petitioner has failed to meet his burden of showing that he was ineffectively represented by trial counsel, appellate counsel's failure to raise the issues on appeal was not objectively unreasonable.  As a result, petitioner also cannot show a reasonable probability that the result of the proceeding would have been different had these claims been raised on direct appeal.  Moreover, many of the issues of ineffective assistance of trial counsel could not have been raised on direct appeal because they relate to matters that are outside the trial record.  See People v. Woods, -- N.Y.S. --, 2007 WL 149677, at *1 (1st Dep't 2007); People v. Martinez, 35 A.D.2d 156, 825 N.Y.S.2d 200, 200 (1st Dep't 2006).

Petitioner also argues that appellate counsel should have argued on direct appeal that trial counsel was ineffective for failing to move to dismiss the depraved indifference count before the case was submitted to the jury.  In reply to respondent's argument that this claim was not raised by petitioner in his error coram nobis petition alleging the failures of appellate counsel, petitioner again requests that this petition be held in abeyance while petitioner returns to state court to bring a third

coram nobis petition raising the unexhausted issue.

However, "stay and abeyance should be available only in limited circumstances [and] is only appropriate when the district court determines there was good cause for the petitioner's failure to exhaust his claims first in state court." Rhines v. Weber, 544 U.S. 269, 277 (2005). Here, petitioner has not demonstrated good cause for his failure to raise this claim in either of his two error coram nobis petitions. Moreover, petitioner has already been granted stays of his petition twice to exhaust state remedies for various claims. Granting yet another stay, particularly in the absence of good cause, would undermine the purposes of AEDPA. Therefore, I recommend denying petitioner's request for a stay.

In any event, "even if a petitioner had good cause for that failure, the district court would abuse its discretion if it were to grant him a stay when his unexhausted claims are plainly meritless." See id.; 28 U.S.C. § 2254(b)(2). Since the underlying claim that the trial court erred in submitting the depraved indifference count to the jury has been found meritless, see supra at 46-53, appellate counsel could not be found to have ineffectively represented petitioner for failing to argue that trial counsel was ineffective for failing to raise a meritless claim. Therefore, I recommend denying this claim on the merits.

D.  Failure to Assist Petitioner in Filing Pro Se
    Supplemental Appellate Brief

Petitioner argues that appellate counsel was ineffective for

failing to notify the Appellate Division of petitioner's intention to file a pro se supplemental appellate brief and failing to assist petitioner in preparation of that brief. See Petition at 12, "Collateral Motion Writ of Error Coram Nobis, Ground One(A)." Petitioner raised this claim in his writ of error coram nobis which was denied. See Farr, 730 N.Y.S.2d 739.

As discussed above, appellate counsel was not obliged to raise every nonfrivoulous argument that petitioner wished to pursue. See Evitts, 469 U.S. at 394; Jones, 463 U.S. at 751-52; Aparicio, 269 F.3d at 95; Mayo, 13 F.3d at 533. Instead, counsel advised petitioner that he could apply for permission to file a pro se supplemental brief with the Appellate Division. See Letter from Arza Feldman to petitioner dated December 4, 1998 (Resp. Exh. L). In fact, on December 28, 1998, petitioner filed a timely request to file a supplemental appellate brief which set forth the points that petitioner intended to raise. See Request for Permission to File Pro Se Supplemental Brief (Resp. Exh. M); N.Y. Ct. Rules § 670.12(h) (requiring that pro se supplemental brief be filed within 30 days of mailing to the defendant of brief prepared by counsel). Petitioner's request was denied by the Appellate Division on April 5, 1999. See Affirmation in Opposition to Writ of Error Coram Nobis at ¶ 8 (Resp. Exh. M). As there is no constitutional right to file a supplemental pro se brief, the decision rests within the discretion of the court. See People v. White, 73 N.Y.2d 468, 477-79 (1989); see also

Martinez v. Court of Appeal of Cal., 528 U.S. 152, 163 (2000)
(holding that there is no "constitutional right to self-
representation on direct appeal from a criminal conviction").

Petitioner claims that counsel failed to protect his rights
by failing to alert the court of petitioner's intention to file
the supplemental brief pursuant to "Criminal Law 1077.3."  See
Petition at 12, "Collateral Motion for Writ of Error Coram Nobis,
Ground One(A)."  However, there is no statutory requirement that
counsel do so.  Rather, in People v. Vasquez, 70 N.Y.2d 1, 4
(1987), the Court held that where a client requests that claims
be presented to the appellate court that the attorney believes
are without merit, counsel should inform his client that he may
file a pro se brief with the court and "should protect his
client's opportunity to submit written argument on the points by
notifying the court of his intentions."  70 N.Y.2d at 4.
Contrary to petitioner's suggestion, however, the only conduct
that the Vasquez court found ineffective was that counsel
disparaged the claims that his client wanted to raise before the
court thereby precluding the client from presenting the claims
effectively in a pro se brief, not the failure to advise the
court that the client would be submitting a supplemental brief.
In any event, the failure to notify the court on the client's
behalf is not sufficient to constitute ineffective assistance of
counsel.  See Lovacco v. Kelly, No. 99 CIV. 3094, 2002 WL
31045942, at *10 (S.D.N.Y. June 13, 2002).  As noted above,

despite counsel's failure to notify the court, petitioner submitted a timely application to submit the supplemental brief and the Appellate Division found petitioner's claims to be meritless. Thus, counsel did not prevent petitioner from presenting those claims.

In addition, petitioner claims that counsel's refusal to send petitioner copies of the trial transcript constituted ineffective assistance. However, counsel informed petitioner in his letter dated December 4, 1998 that if his application to submit a supplemental brief were granted, the court would send him a copy of the record on appeal. See Letter to petitioner from Arza Feldman dated December 4, 1998 (Resp. Exh. L). Moreover, petitioner could have obtained the transcript by sending someone to copy it for him at the County Clerk's office. See James v. Kelly, No. 99 Civ. 3093, 2000 WL 222629, at *1 (S.D.N.Y. Feb. 25, 2000).

In any event, petitioner's contention is specious since petitioner did not even mention the claim of ineffective assistance of trial counsel that petitioner complains appellate counsel refused to raise when petitioner sought leave to file a supplemental brief. See Request for Permission to File Pro Se Supplemental Brief (Resp. Exh. M). Also, as discussed above, petitioner has failed to meet his burden of showing that he received ineffective representation by trial counsel. See supra at 66-81. Therefore, petitioner could not have been prejudiced

by appellate counsel's failure to raise the issue on appeal and deciding to focus on other arguments instead.

> E. <u>Failure to Challenge Submission of Depraved Indifference Murder Count to Jury For Insufficient Evidence and the Verdict Being Against the Weight of the Evidence</u>

Petitioner argues that appellate counsel was ineffective for failing to argue that the court erred in submitting the depraved indifference count to the jury, which is raised in his first <u>error coram nobis</u> petition. <u>See</u> Petition at 14, "Collateral Motion Writ of Error Coram Nobis, Ground (C);" Supp. Mem. at 18-22. However, as discussed above this claim is meritless. <u>See</u> <u>supra</u> at 46-53. Therefore, counsel could not be found to be ineffective for failing to raise the issue and the Appellate Division's decision was not contrary to, and does not involve an unreasonable application of, clearly established federal law.

> F. <u>Failure to Raise Claim that Distinction Between Depraved Indifference Murder and Reckless Manslaughter is Unconstitutionally Vague</u>

Petitioner argues that appellate counsel was ineffective for failing to argue that the distinction between the intent elements of depraved indifference murder and manslaughter in the second degree are unconstitutionally vague. <u>See</u> Second Amended Pet. at 3-4, "Ground D." The Appellate Division rejected this claim in ruling on petitioner's second <u>error coram nobis</u> petition.

As already discussed, the underlying claim is without merit. Moreover, the argument that the depraved indifference murder statute is unconstitutionally vague had, at the time of

petitioner's direct appeal, been repeatedly rejected by the New York Court of Appeals.  <u>People v. Johnson</u>, 87 N.Y.2d 357, 639 N.Y.S.2d 776 (1996); <u>People v. Cole</u>, 85 N.Y.2d 990, 629 N.Y.S.2d 166 (1995); <u>People v. Poplis</u>, 30 N.Y.2d 85, 88, 330 N.Y.S.2d 365 (1972).  Therefore, appellate counsel cannot be found ineffective for failing to raise this issue.  The Appellate Division's rejection of petitioner's claim was neither contrary to, nor an unreasonable application of, clearly established federal law.

## CONCLUSION

For the foregoing reasons, I recommend that this Court deny James Farr's petition for a writ of habeas corpus.  As petitioner has not made a substantial showing of the denial of a constitutional right, I further recommend that this Court deny any application by petitioner for a certificate of appealability.  See Lozada v. United States, 107 F.3d 1011 (2d Cir. 1997) (district court may grant certificate), abrogated on other grounds by United States v. Perez, 129 F.3d 255, 259-60 (2d Cir. 1997)).

This report and recommendation will be electronically filed and sent by overnight mail to petitioner.  Any objections to this Report and Recommendation must be electronically filed, with a courtesy copy sent to Judge Gershon and the undersigned, by March 15, 2007.  Failure to file objections within the specified time waives the right to appeal.  See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).


**SO ORDERED.**


Dated:     Brooklyn, New York
           February 23, 2007


_____/s/_____
MARILYN DOLAN GO
UNITED STATES MAGISTRATE JUDGE